UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT BISCHOFF and LERON DEMPSEY,<br><br>Plaintiffs,<br><br>v.<br><br>SANDRA BRITTAIN, KEITH JOHNSON, and RZM INVESTMENTS ENTERPRISE, LLC,<br><br>Defendants. | No. 2:14-cv-01970-KJM-CKD<br><br>ORDER |

       Plaintiffs Scott Bischoff and Leron Dempsey (collectively "plaintiffs") have moved for a preliminary injunction. (ECF No. 4.) Plaintiffs seek to enjoin the alleged discriminatory termination of their tenancies, provided plaintiffs continue to pay rent. (ECF No. 11 at 2.) The court held a hearing on September 26, 2014, at which Todd Espinosa appeared for plaintiffs and Richard Watts, Jr. appeared for defendants. As explained below, the court GRANTS plaintiffs' motion.

I.     <u>BACKGROUND</u>

       The claims in this case arise out of defendants' alleged discriminatory housing practices based on familial status and age in enforcing defendants' apartment complex policies. Specifically, "[p]laintiffs contend that [d]efendants are acting to terminate [p]laintiffs' tenancies because [p]laintiffs allowed their children to make reasonable use [sic] outdoor areas of the

1

1  apartment complex." (ECF No. 4-2 at 1.)  Mr. Bischoff has been a tenant of the Birchwood

2  Gardens apartment complex ("the Complex") since August 2013.  (Bischoff Decl. ¶ 2, ECF

3  No. 4-13.)  Mr. Bischoff lives with his three-year-old son.  (*Id.* ¶ 5.)  Mr. Dempsey has been a

4  tenant at the Complex since October 2013.  (Dempsey Decl. ¶ 2, ECF No. 4-9.)  Mr. Dempsey

5  has a five-year-old son, an eight-year-old son, an eight-year-old step-daughter and a thirteen-year-

6  old daughter, who regularly stay with him at his apartment on weekends.  (*Id.* ¶ 5.)

7          Defendant Sandra Brittain operates her own property management business under

8  the name "Brittain Commercial," through which she manages the Complex.  (Brittain Decl. ¶¶ 2,

9  5, ECF No. 13; Espinosa Decl., Ex. C., ECF No. 4-7.)  Defendant Keith Johnson is a Brittain

10  Commercial employee and the on-site property manager of the Complex.  (Johnson Decl. ¶ 2,

11  ECF No. 13.)  Defendant RZM Investments Enterprise, LLC ("RZM") is the owner of the

12  Complex and is plaintiffs' landlord.  (ECF No. 4-7 ¶¶ 6, 10.)

13          Plaintiffs allege defendants restrict children's access to the Complex's outdoor

14  areas: the courtyard and the swimming pool area.  (ECF No. 4-2 at 3.)  Defendants accomplish

15  these restrictions by "more strictly enforcing and threatening to enforce" the Complex rules and

16  rental agreement provisions against families with children when children use the outdoor areas.

17  (*Id.*)  On the other hand, adults with no children "have not been subjected to this special, stricter

18  treatment."  (*Id.* at 4.)  Plaintiffs allege defendant Johnson "was the primary implementer of this

19  special, stricter treatment directed towards children and tenant families with children."  (*Id.*)  For

20  example, plaintiffs allege that Mr. Johnson has issued numerous verbal and written warnings to

21  families with children when the children of those families used the outdoor areas of the Complex.

22  (*Id.*)  Those warnings involved "exaggerated statements that children had been noisy and had

23  engaged in disruptive behavior when, in fact, those children had not been unreasonably noisy and

24  had not been disruptive."  (*Id.*)

25          On June 30, 2014, Mr. Johnson issued warning notices to both plaintiffs, stating

26  plaintiffs had violated the rental agreement and threatening to terminate plaintiffs' rental

27  agreements.  In his warning to Mr. Bischoff, Mr. Johnson noted that Mr. Bischoff had violated the

28  rental agreement because his three-year-old son had "block[ed] access" to walkways and stairs

1    and had been loud and boisterous.  (ECF No. 4-13, Ex. A.)  Similarly, in his warning to

2    Mr. Dempsey, Mr. Johnson noted that Mr. Dempsey and his two young sons, ages five and eight,

3    had occupied the "entire" swimming pool and the surrounding area.  (ECF No. 4-9, Ex. A.)

4    Shortly after those warnings, both plaintiffs talked with Mr. Johnson to resolve any

5    misunderstandings amicably, but were unable to.  (*See* ECF No. 4-9 ¶¶ 11, 13; ECF No. 4-13

6    ¶¶ 11, 13.)  During their conversation with Mr. Johnson about the warnings, plaintiffs told

7    Mr. Johnson they had the right to use the Complex's outdoor areas and that they would continue

8    to allow their children to use those areas.  (ECF No. 4-9 ¶ 11; ECF No. 4-13 ¶ 11.)  On July 29,

9    2014, Mr. Johnson posted a thirty-day termination notice on both plaintiffs' doors, with a

10   termination date of August 31, 2014.  (ECF No. 4-9, Ex. B; ECF No. 4-13, Ex. B.)

11           After exhausting their efforts to resolve their disputes without court intervention,

12   plaintiffs filed a complaint on August 25, 2014, alleging three claims: (1) violation of 42 U.S.C.

13   § 3604(b); (2) violation of 42 U.S.C. § 3617; and (3) violation of California Civil Code §§ 51 and

14   51.2.  (*See generally* Pls.' Compl. ("Compl.") at 10–11, ECF 1.)  Two days later, plaintiffs filed a

15   motion for a temporary restraining order and preliminary injunction.  (ECF No. 4.)  The parties

16   agreed to a temporary restraining order on August 29, 2014, allowing plaintiffs to remain living at

17   the Complex until the court decided the motion for preliminary injunction.  (ECF No. 8.)  At

18   hearing on the preliminary injunction, while defendants suggested further stipulations might be

19   possible they presented no stipulation.

20   II.     LEGAL STANDARD

21           "A preliminary injunction is an extraordinary remedy never awarded as of right[,]"

22   *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "should not be granted

23   unless the movant, *by a clear showing*, carries the burden of persuasion[,]" *Lopez v. Brewer*,

24   680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)

25   (emphasis in original)).  The purpose of a preliminary injunction is to preserve the status quo and

26   the rights of the parties until a final judgment can be issued.  *U.S. Philips Corp. v. KBC Bank*

27   *N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).  In determining whether to issue a preliminary

28   injunction, the court applies the following factors: whether the moving party "[1] is likely to

1  succeed on the merits, . . . [2] is likely to suffer irreparable harm in the absence of preliminary
2  relief, . . . [3] the balance of equities tips in [the movants'] favor, and . . . [4] an injunction is in
3  the public interest." *Winter*, 555 U.S. at 20.
4  　　　　　The Ninth Circuit has "also articulated an alternate formulation of the *Winter* test."
5  *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).  That formulation is referred to as the
6  "serious questions" or the "sliding scale" approach: "'serious questions' going to the merits and a
7  balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary
8  injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and
9  that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d
10 1127, 1135 (9th Cir. 2011) ("the 'serious questions' approach survives *Winter* when applied as
11 part of the four-element *Winter* test," *id.* at 1132). "In other words, 'serious questions going to the
12 merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an
13 injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132.  Under
14 the "serious questions" approach to a preliminary injunction, "[t]he elements of the preliminary
15 injunction test must be balanced, so that a stronger showing of one element may offset a weaker
16 showing of another." *Lopez*, 680 F.3d at 1072.  Irrespective of the approach to a preliminary
17 injunction, a court must balance the competing alleged harms while considering the effects on the
18 parties of the granting or withholding of the injunctive relief. *Winter*, 555 U.S. at 24.  In
19 exercising that discretion, a court must also consider the public consequences of the extraordinary
20 remedy.  *Id.*
21 　　　　　In ruling on a preliminary injunction, the court may rely on declarations, affidavits,
22 and exhibits, among other things. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *see*
23 *also Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give
24 even inadmissible evidence some weight, when to do so serves the purpose of preventing
25 irreparable harm before trial.").  Such evidence need not conform to the standards for a summary
26 judgment motion. *Bracco v. Lackner*, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978).  "The urgency
27 necessitating the prompt determination of the preliminary injunction; the purpose of a preliminary
28 injunction, to preserve the status quo without adjudicating the merits; and the [c]ourt's discretion

to issue or deny a preliminary injunction are all factors supporting the considerations of affidavits." *Id*. And "[t]he weight to be given such evidence is a matter for the [c]ourt's discretion, upon consideration of the competence, personal knowledge and credibility of the affiant." *Id.*; *see also Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (in ruling on a motion for preliminary injunction, the "weight to be given each [affiant's] statement is in the discretion of the trial court").

III.   DISCUSSION

    A.   Likelihood of Success on the Merits: Discrimination in Rental Housing Based on Familial Status, 42 U.S.C. § 3604(b)

Plaintiffs argue that defendants "restrict access of children to outdoor areas of the [Complex], especially the courtyard and swimming pool . . . ." (ECF No. 4-2 at 3.) "These restrictions . . . were accomplished by specially and more strictly enforcing and threatening to enforce apartment complex rules and rental agreement provisions against children and families with children when children used outdoor areas of [the Complex.]" (*Id.*) "The purpose and effect of this special, stricter treatment has been to discourage families with children from allowing their children to make reasonable use of outdoor areas at [the Complex.]" (ECF No. 4-2 at 5.)

Defendants counter that the Complex's rules are enforced strictly and equally with respect to all tenants and it is only plaintiffs' opinion that they are treated differently. (ECF No. 12 at 9.)

Section 3604(b) of the Fair Housing Act ("FHA") makes it unlawful "[t]o discriminate against any person in terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status . . . ." 42 U.S.C. § 3604(b). "Limiting the use of privileges and facilities associated with a dwelling because of familial status is a violation of [§ 3604(b).]" *Fair Hous. Cong. v. Weber*, 993 F. Supp. 1286, 1292 (C.D. Cal. 1997) (citing 24 C.F.R. § 100.65). Familial status discrimination entails "discrimination against families with children." *Id.* at 1290. Under the FHA, "an aggrieved person" may bring suit to obtain relief in the form of "permanent or temporary injunction . . . or other order (including an order enjoining the defendant from

engaging in such practice or ordering such affirmative action as may be appropriate).” 42 U.S.C. § 3613(c)(1).

A plaintiff may bring a claim under § 3604(b) under either a disparate treatment or disparate impact theory. *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008) (courts apply Title VII discrimination analysis in cases brought under the FHA). Plaintiffs here rely on the disparate treatment theory. (ECF 4-2 at 8 ("plaintiffs contend that defendants have violated the [FHA] through disparate treatment based on familial status in relation to housing facilities and common areas . . . .").) Accordingly, this court's analysis is limited to disparate treatment. *See Iniestra v. Cliff Warren Investments, Inc.*, 886 F. Supp. 2d 1161, 1166 (C.D. Cal. 2012) (where the plaintiffs argued under only a disparate treatment theory, the court "follow[ed] the briefing submitted by [the] [p]laintiffs and limit[ed] itself to a disparate treatment analysis. Also, because [p]laintiffs successfully ma[de] a showing under disparate treatment, there [was] no need to delve into a disparate impact analysis").

Cases relying on disparate treatment generally are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff has the initial burden of establishing a *prima facie* case of housing discrimination. *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). The elements of a *prima facie* case under the *McDonnell Douglas* framework vary depending on the facts of each case. *See id.* Adapted to the instant case, the elements are: (1) plaintiffs' rights are protected under the FHA; and (2) plaintiffs have suffered an injury because of defendants' discriminatory acts. *Id.* Once a plaintiff establishes a *prima facie* case, a presumption of discrimination arises. *Id.* Then, the burden shifts to defendants "to articulate some legitimate, nondiscriminatory reason for the action." *Id.* "To accomplish this, the defendant is only required to set forth a legally sufficient explanation." *Id.* After a defendant asserts a legitimate reason, the plaintiffs must then show that the articulated reason is pretextual. *Id.*

However, "a plaintiff can also establish a *prima facie* case of disparate treatment without satisfying the *McDonnell Douglas* test." *Lowe v. City of Monrovia*, 775 F.2d 998, 1006 (9th Cir. 1985) *amended*, 784 F.2d 1407 (9th Cir. 1986). Meaning, "[i]n lieu of satisfying the

1    elements of a *prima facie* case, a plaintiff may also simply produce direct or circumstantial

2    evidence demonstrating that a discriminatory reason more likely than not motivated the

3    challenged decision." *Budnick*, 518 F.3d at 1114.  Yet, under either method of establishing a

4    *prima facie* case, "the plaintiff must counter the defendant's explanation with some evidence

5    suggesting that the challenged action was due in part or whole to discriminatory intent." *Id.*

6              1.     Prima facie case

7              Here, for the limited purpose of the instant motion, the court finds plaintiffs have

8    established a prima facie case.  Plaintiffs' theory is that their tenancies are being terminated

9    because of their familial status, and, more specifically, because they have told Mr. Johnson they

10   would continue to allow their children to use the Complex's common areas.  In support, plaintiffs

11   have introduced numerous declarations from the Complex's tenants.

12             William Bennett has been renting an apartment at the Complex for two years.

13   (Bennett Decl. ¶ 2, ECF No. 4-4.)  Mr. Bennett recounts when he first met defendant Mr.

14   Johnson, Johnson said he "did not like to rent to tenants with children . . . [because] he believ[ed]

15   children make too much noise."  (*Id.* ¶ 3.)  Mr. Bennett reports he has witnessed Mr. Johnson

16   "selectively enforce rules against families with children[]": Mr. Johnson would tell "the children,

17   who were playing in common areas and making the amount of noise typical of children playing,

18   to be quiet."  (*Id.* ¶ 4.)  Based on what Mr. Bennett has witnessed, Mr. Johnson "treats children

19   more harshly when it comes to noise than he does adults making similar amounts of noise."  (*Id.*

20   ¶ 5.)  Mr. Bennett states Mr. Dempsey and Mr. Bischoff "are good and respectful neighbors."

21   (*Id.* ¶ 6.)

22             Anthony Bray has been renting an apartment at the Complex for about eleven

23   years.  (Bray Decl. ¶ 1, ECF No. 4-5.)  Mr. Bray asserts Mr. Dempsey is "a friendly and

24   respectful neighbor" (*id.* ¶ 3), and that he has never had any noise problems with Mr. Dempsey's

25   children (*id.* ¶ 4).

26             Christie Gritz rents an apartment at the Complex with her husband and her two-

27   year-old son.  (Gritz Decl. ¶ 1, ECF No. 4-6.)  Based on her personal experiences, Ms. Gritz

28   believes defendant Mr. Johnson "is biased against children and families with children living" at

7

1   the Complex.  (*Id.* ¶ 2.)  Ms. Gritz states that on one occasion in July 2014, defendant Mr.

2   Johnson, seeing Ms. Gritz pregnant, made the following comment: "Oh no, not another one!"  (*Id.*

3   ¶ 3.)  Ms. Gritz further asserts:

4           In April 2014, my husband was in the pool with my son, and
several other adult residents of the complex.  All of the residents in
5           the pool were having fun and making a reasonable amount of noise.
Keith Johnson came out of his office and asked my husband to
6           "quiet down" our two year old.  Keith Johnson did not say anything
to the other adults in the pool who were also making noise.
7

        . . . .
8

        Almost every time I see Keith Johnson on the property, he makes
9           some comment related to my children or family.  He has regularly
asked me and my husband, referring to our children, "Do you think
10          you can handle another one?"  . . .

11  (*Id.* ¶¶ 4, 6.)

12          Ms. Gritz's family no longer uses the pool as they are "tired of being singled out"

13  and do not want to be evicted.  (*Id.* ¶¶ 5, 7.)  Mr. Gritz confirms Ms. Gritz's assertions in his own

14  declaration.  (*See* Leon Gritz Decl., ECF No. 4-10.)  Both Gritzes say that plaintiffs are respectful

15  neighbors.  (*See* ECF No. 4-6; ECF No. 4-10.)

16          Nasimeh Mashhadi, a single mother with two daughters, avers that after receiving

17  two warnings from defendants, she no longer allows her children to play outside.  (Mashhadi

18  Decl., ECF No. 4-11.)  She "would like to move to a new complex, where [her] children can play

19  freely outside, but [she] cannot afford to."  (*Id.* ¶ 5.)  She also states both plaintiffs are "good and

20  respectful neighbors."  (*Id.* ¶ 6.)

21          Victoria Peters, who has lived in the Complex for about ten years and lives close

22  to the pool area, states she has never found Mr. Bischoff's child "to be disruptive or to make an

23  unreasonable amount of noise . . . ."  (Peters Decl. ¶ 4, ECF No. 4-12.)

24          Kashi Tomicich, a student at Sacramento State University, states he has never

25  found plaintiffs' children to make unreasonable noise.  (Tomicich Decl. ¶ 4, ECF No. 4-14.)

26          With their supplemental brief, plaintiffs introduce two other declarations by

27  current tenants that are consistent with the declarations reviewed above.  (*See* Elliot Decl., ECF

28  No. 11-2; Odongo Decl., ECF No. 11-3.)

1          Plaintiffs' evidence supports their theory of the case: When Mr. Johnson sees a
2   child using the outdoor areas, he issues a warning to that family; the family fears additional
3   warnings and the threat of eviction and no longer allows children to use the outdoor areas; and
4   children are effectively denied access to the outdoor areas.  (*See* Mashhadi Decl., ECF No. 4-11;
5   Peters Decl., ECF No. 4-12.)  When plaintiffs indicated that they intended to allow their children
6   to use the outdoor areas even after the warnings, plaintiffs were provided with termination
7   notices.  Defendants' argument that plaintiffs have failed to establish a *prima facie* case because
8   they have not pointed to any facially discriminatory rule is unpersuasive.  Plaintiffs' theory of the
9   case is that Mr. Johnson enforced facially neutral rules discriminatorily.  At hearing, defendants
10  conceded the offending rules could be unwritten.  *See Cooke v. Town of Colorado City, Ariz.*, 934
11  F. Supp. 2d 1097, 1115 (D. Ariz. 2013) (noting while the "policy was unwritten and not formally
12  adopted," it could serve as a ground for a discrimination claim).
13         Because plaintiffs have introduced "direct or circumstantial evidence
14  demonstrating that a discriminatory reason more likely than not motivated the [issuance of the
15  eviction notices]:" *Budnick*, 518 F.3d at 1114, they have established a *prima facie* case.
16         With a prima facie case of retaliation established, the burden shifts to defendants
17  to articulate a legitimate nondiscriminatory reason for their decisions.
18         2.     Legitimate Nondiscriminatory Reasons
19         Defendants justify their decision to evict plaintiffs on the bases of the children's
20  safety and the other tenants' comfort and convenience.  (ECF No. 12 at 10.)
21         To support their plan to evict Mr. Dempsey, defendants state, "Mr. Dempsey's
22  conduct was disruptive, confrontational," and "inconsistent with a safe community for the benefit
23  of all the residents."  (*Id.*)  Defendants offer a notice of rule violation dated February 24, 2014
24  that states in part: "Stereo can be heard outside of the apartment . . . .  Reduce volume, close
25  windows . . . . No disturbance permitted."  (Johnson Decl., Ex. 3, ECF No. 13-3.)  Defendants
26  also offer a warning notice dated May 12, 2014 for events that allegedly took place on May 4,
27  2014; the notice alleges complaints from neighbors regarding Mr. Dempsey's guests at the pool
28  area being noisy.  (*Id.* Ex. 4, ECF No. 13-4.)  Defendants also present purported complaints from

9

two neighbors, about noise allegedly made by Mr. Dempsey and his guests. (*See id.* Ex. 5, ECF No. 13-5; Ex. 26, ECF No. 13-6.) Finally, defendants submit a warning notice dated June 30, 2014 for Mr. Dempsey's guests allegedly "occupying [the] entire pool . . . ." (*Id.* Ex. 6, ECF No. 13-7.)

As to Mr. Bischoff, defendants state he is a repeat violator of the lease agreement and "repeatedly left his three-year-old unsupervised within the community . . . ." (ECF No. 12 at 11.) Defendants introduce a warning notice dated June 30, 2014, reporting that Mr. Bischoff's three-year-old son had blocked "access to walkways, stairs . . . ." (ECF No. 13-10, Ex. 9.) Mr. Johnson also claims he has observed Mr. Bischoff regularly carry and consume alcohol in the common areas (ECF No. 13 ¶ 28) and allow his unregistered guests to use the pool (*id.* ¶¶ 26–27).

### 3. Pretext

Assuming without deciding that defendants' justifications deserve some weight, the court may consider the same evidence plaintiffs introduced to establish a prima facie case in determining whether defendants' explanations are mere pretext. *Harris*, 183 F.3d at 1051. As concluded above, plaintiffs have raised serious questions on the merits regarding an alleged pattern of discrimination by defendants against families with young children. The evidence submitted by plaintiffs is factual, as opposed to conclusory, and nothing in the record shows plaintiffs' declarants are biased such that the declaration should be disregarded. *Cf. Oakland Tribune,* 762 F.2d at 1377 (discounting testimony of a witness because he provided "only conclusory statements and was an interested party"). The evidence before the court raises serious questions whether any concern for the safety of children or comfort of tenants is pretextual.

### 4. Conclusion

The court finds there are serious questions going to the merits of plaintiff's § 3604(b) claim because there is evidence showing defendants discriminated against plaintiffs and their children "in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status[.]" 42 U.S.C. § 3604(b); *see also Hous. Rights Ctr. v. Donald Sterling Corp.*, 274 F. Supp. 2d 1129,

/////

1137 (C.D. Cal. 2003) ("The Fair Housing Act must be interpreted broadly to effectuate its purposes . . . ."), *aff'd, Hous. Rights Ctr. v. Sterling*, 84 F. App'x 801 (9th Cir. 2003).

The court need not reach plaintiff's other two claims. *See Souza v. Cal. Dept. of Transp.*, No. 13-04407, 2014 WL 1760346, at *6 (N.D. Cal. May 2, 2014) (citing *Alliance for the Wild Rockies*, 632 F.3d at 1139).

### B.   Irreparable Harm

Plaintiffs argue they satisfy the irreparable harm requirement because in cases involving discriminatory housing practices, irreparable harm is presumed. (ECF No. 4-2 at 11.) Defendants counter the presumption is inapplicable because plaintiffs have not established a likelihood of success on the merits of their claims. (ECF No. 12 at 13.)

The Ninth Circuit has held "where a defendant has violated a civil rights statute, [courts] will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001). This is especially true where injunctive relief is sought to prevent a violation of a federal statute that specifically provides for injunctive relief. *Id.* (citing *Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1074 (9th Cir. 1991) and *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) (holding "irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes")).

Here, the FHA specifically authorizes a district court to grant "any permanent or temporary injunction . . . ." 42 U.S.C. § 3613(c)(1). Plaintiffs have satisfied the irreparable injury requirement.

### C.   Balance of Hardships

The court finds the balance of hardships tips sharply in plaintiffs' favor. If plaintiffs' motion is denied, Mr. Dempsey, suffering from "mental and mood disabilities [and] a severe learning disability," will have "extreme[] difficulty . . . to find a new home" near where his children live. (ECF No. 4-9 ¶ 16.) Mr. Bischoff avers if he loses his home, he and his three-year-old child are at risk of becoming homeless. (ECF No. 4-13 ¶ 16.) Neither plaintiff has significant financial resources or discretionary income. Mr. Dempsey is receiving federal disability benefits.

1    Mr. Bischoff is attempting to start a business.  (Bischoff Reply Decl. ¶ 17, ECF No. 15-1;
2    Dempsey Reply Decl. ¶ 17, ECF No. 15-2).

3               Defendants contend granting the preliminary injunction will cause other tenants to
4    vacate units due to plaintiffs' presence and, thus, cause a loss of rental income.  (ECF No. 12 at
5    15–16.)  At hearing, defendants conceded no tenant has vacated or expressed an intent to leave
6    the Complex because of plaintiffs' presence.  Defendants also contend because plaintiffs are able
7    to pay rent at the Complex, they will be able to pay rent elsewhere.  (*Id.*)  Defendants do not
8    challenge plaintiffs' position that they cannot afford moving costs and other difficulties
9    associated with moving.  (ECF No. 4-9 ¶ 16; ECF No. 4-13 ¶ 16.)

10              The immediate harm to plaintiffs outweighs the speculative harm to defendants.
11   Because plaintiffs are willing to continue to pay their rent during the pendency of the case, any
12   financial harm defendants may suffer is both speculative and minimal.  (ECF No. 4-9 ¶ 19; ECF
13   No. 4-13 ¶ 19.)

14          D.      Public Interest

15              As plaintiffs point out in their reply, defendants make no mention of the public
16   interest in their opposition brief.  (ECF No. 17 at 9–10.)  The court finds the public interest
17   weighs in favor of granting the preliminary injunction.  "[T]he public interest has been
18   authoritatively declared by Congress in its enactment of [the FHA.]"  *Na"im v. Sophie's Arms*
19   *Fine Residences, LLC*, No. 13-02515, 2013 WL 8609251, at *2 (S.D. Cal. Nov. 18, 2013).

20          E.      The Bond Requirement

21              Federal Rule of Civil Procedure 65(c) provides "[t]he court may issue a
22   preliminary injunction . . . only if the movant gives security in an amount that the court considers
23   proper to pay the costs and damages sustained by any party found to have been wrongfully
24   enjoined . . . ."  District courts have wide discretion in fashioning the amount of bond, and "the
25   bond amount may be zero if there is no evidence the party will suffer damages from the
26   injunction."  *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882
27   (9th Cir. 2003).  In addition, "[t]he district court has discretion to dispense with the security
28   requirement, or to request mere nominal security, where requiring security would effectively deny

12

access to judicial review." *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency,* 766 F.2d 1319, 1325 (9th Cir. 1985) (finding proper the district court's exercise of discretion in allowing environmental group to proceed without posting a bond), *amended on other grounds,* 775 F.2d 998 (9th Cir. 1985); *Barahona–Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999) ($1,000 bond in class action not abuse of discretion in light of showing that "the vast majority of aliens [affected by class action] were very poor").

Here, the court will not require plaintiffs to post a bond. Both plaintiffs are current on their rent, and Brittain Commercial has accepted plaintiffs' payments to date. Both plaintiffs declare they will continue to pay their rent during the pendency of this action. (ECF No. 4-9 ¶ 19; ECF No. 4-13 ¶ 19.) Because there is no credible evidence defendants will suffer any actual damages from a preliminary injunction, the court finds no need for a bond. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

IV.     CONCLUSION

For the foregoing reasons, the court grants plaintiffs' motion and orders as follows:

1. Defendants Sandra Brittain, Keith Johnson and RZM Investments Enterprise, LLC shall allow plaintiffs to remain in and use and enjoy their apartments at the Birchwood Gardens apartment complex, and shall not terminate plaintiffs Scott Bischoff's and Leron Dempsey's tenancies based on discriminatory reasons in violation of the FHA so long as plaintiffs continue to pay their monthly rent.

2. Plaintiffs Scott Bischoff and Leron Dempsey shall continue to pay rent to defendants at the current monthly rate as the rent becomes due. Payment of rent shall be delivered to the on-site manager's office.

3. This preliminary injunction will remain in effect until a final determination of plaintiffs' claims.

/////

/////

/////

4. No bond is required at this time.

IT IS SO ORDERED.

DATED: October 10, 2014.

_____
UNITED STATES DISTRICT JUDGE

14