1

2

3

4

5

6

7

8                                 UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SCOTT BISCHOFF, et al.,                          No.  2:14-cv-01970-KJM-CKD

12                    Plaintiffs,

13        v.                                          ORDER

14   SANDRA BRITTAIN, et al.,

15                    Defendants.

16

17

18              Plaintiffs Scott Bischoff, Leron Dempsey, and Project Sentinel, Inc. ("Project

19   Sentinel") filed this action against defendants RZM Investment Enterprise, LLC ("RZM"), J.A.

20   Brittain, Limited ("Brittain Commercial"), Keith Johnson, and Sandra Brittain, alleging that their

21   housing practices discriminate based on familial status.  Before the court is a motion for partial

22   summary judgment as to RZM's and Brittain Commercial's liability under the Fair Housing Act

23   ("FHA"), 42 U.S.C. § 3604(b), brought by Project Sentinel, ECF No. 47, and a motion for leave

24   to amend the first amended complaint by plaintiffs Bischoff, Dempsey, and Project Sentinel, ECF

25   No. 75.  The court held a hearing on Project Sentinel's motion for partial summary judgment on

26   November 20, 2015, at which Todd Espinosa appeared for Project Sentinel and David MacMillan

27   appeared for RZM and Brittain Commercial.  The court submitted plaintiffs' later-filed motion

28   for leave to amend as provided by Local Rule 230(g).  As explained below, the court GRANTS

                                                    1

1  Project Sentinel's motion for partial summary judgment and GRANTS plaintiffs' motion for

2  leave to amend the first amended complaint.

3          The court first addresses the motion for partial summary judgment and then turns

4  to the motion for leave to amend.

5  I.      MOTION FOR PARTIAL SUMMARY JUDGMENT

6          A.      Evidentiary Objections

7                  In resolving a motion for summary judgment, a court may consider evidence as

8  long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

9  "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of*

10 *L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

11 (1986)).  The party seeking admission of evidence "bears the burden of proof of admissibility."

12 *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  If the opposing party objects

13 to the proposed evidence, the party seeking admission must direct the district court to

14 "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and

15 exemptions, or other evidentiary principles under which the evidence in question could be

16 deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).

17 However, courts are sometimes "much more lenient" with the affidavits and documents of the

18 party opposing summary judgment.  *Scharf v. U.S. Attorney Gen.*, 597 F.2d 1240, 1243 (9th Cir.

19 1979).

20                 1.      Defendants' Objections

21                 Defendants object to portions of Project Sentinel's evidence as assuming facts not

22 in evidence, lacking foundation, misstating the evidence, and being irrelevant.  ECF No. 61-2.  To

23 the extent defendants object on the basis of relevance, such objections "are all duplicative of the

24 summary judgment standard itself . . . [The court] cannot rely on irrelevant facts, and thus

25 relevance objections are redundant." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110,

26 1119 (E.D. Cal. 2006).  In addition, the court will not consider defendants' objections aimed at

27 the characterization or purported misstatement of the evidence as represented in Project Sentinel's

28 Statement of Disputed Facts.  The court's decision relies on the evidence submitted rather than

how that evidence is characterized in the statements. *See Becker v. Wells Fargo Bank NA, Inc.*, No. 10-2799, 2014 WL 3891933, at *2 (E.D. Cal. Aug. 7, 2014) ("Defendant's evidentiary objections to [plaintiff's] separate statements of . . . disputed facts are not considered because such objections should be directed at the evidence supporting those statements rather than the statements themselves." (internal quotation marks and citations omitted)).

2.      Project Sentinel's Objections

Project Sentinel objects to portions of Sandra Brittain's declaration, EFC No. 61-3, because it was not properly signed electronically as provided by Local Rule 131(f), contained statements not made within her personal knowledge, and included an exhibit that did not properly redact Leron Dempsey's date of birth information.  ECF No. 63-1.  Defendants' counsel corrected the first error by submitting the original signed copy of the declaration.  ECF No. 64.  The court need not consider the second objection regarding Brittain's personal knowledge, because this order does not rely on the challenged statements.  The court sustains the third objection. Defendants are ORDERED to partially redact Dempsey's date of birth information contained in Exhibit 4 to the Brittain Declaration as required by Local Rule 140(a) within fourteen (14) days of the date this order is filed.

In addition, Project Sentinel objects to defendants' request for judicial notice of the proposition that, "[a]s a matter of public and social policy, it is reasonable to require adult supervision of YOUNG children living in rented housing," Opp'n at 10 (emphasis in original; providing no definition of "young").  Defendants argue this proposition is a proper matter for judicial notice under Federal Rule of Evidence 201(b)(1) as an adjudicative fact that "is generally known within the trial court's territorial jurisdiction."  The court finds that such a vague and unsubstantiated assertion is not a proper subject of judicial notice under Rule 201(b) and cannot be used to create a genuine dispute of fact under Federal Rule of Civil Procedure 56(c)(1).

B.      Undisputed Facts

1.      Background

The court has examined the record to determine whether the submitted facts are supported and whether there exists a genuine dispute as to material facts.  The following facts are

1    undisputed.  The Birchwood Gardens apartment complex is located at 1225 Bell Street,

2    Sacramento, California.  Statement of Undisputed Material Facts ("UMF") no. 2, ECF Nos. 47-2

3    & 61-1.  The complex contains approximately thirty apartments that surround a common area

4    with a fenced swimming pool.  *Id.*; Brittain Decl. ¶¶ 5, 7.  Defendant RZM owns Birchwood

5    Gardens.  UMF no. 1.  Defendant Brittain Commercial manages Birchwood Gardens on RZM's

6    behalf under a written property management agreement.  UMF no. 4.

7                        1.      "Brief Recap of Notes" Document

8                 Brittain Commercial's resident on-site managers receive training, including

9    "Resident Relations Training," at seminars provided by independent experts.  Brittain Decl.

10   ¶¶ 11–13; Espinosa Decl., Ex. B, ECF No. 47-4.  Brittain Commercial's "Brief Recap of Notes"

11   document summarizes several managers' training meetings and was distributed to the managers

12   for their reference.  Brittain Decl. ¶ 15.  The document states in relevant part:

13               Handling unsupervised children:

14                  1. If you have a young child not being supervised, walk the child
                   home and speak with whoever is in charge.
15

16                  2. Have your supervisor write a letter after you speak with the
                   person in the apartment, which will alert whoever opens the mail,
17                 that you are worried over the child's safety—you are now showing
                   safety concerns and are not attacking their parenting skills or being
18                 discriminatory.

19                  3. If nothing changes and the child is once again outside
                   unsupervised, notify your supervisor who will now contact social
20                 services and/or the police.

21                  4. If nothing still changes, we will then consider eviction and note
                   the reasoning on their notice.

22   Espinosa Decl., Ex. D.

23                 Defendant Sandra Brittain, the Property Director of Brittain Commercial, states in

24   her declaration that the "Brief Recap of Notes" document is "simply a statement of suggested

25   guidelines for the managers' reference and discretionary application to unsupervised young

26   children."  Brittain Decl. ¶ 10.

27   /////

28   /////

                                          4

She explains the reasoning behind the policy in her declaration:

> It is our understanding and belief that young children require regular adult supervision . . . . In managing Birchwood Gardens, we believe that it is within the scope of our management role to encourage . . . parents and guardians to exercise such supervision for the safety of their young children and for the benefit of other residents.  We believe that such supervision is necessary so that young children who are tenant residents of Birchwood Gardens will not be at risk of injuring themselves or other residents, or engaging in disruptive or destructive activities.  In an effort to promote such supervision and discourage parent-guardian neglect, we developed internal suggested guidelines for managers to use in their discretion as circumstances might warrant.

*Id.* ¶ 9.

> The primary goals of these guidelines are to protect the safety and well-being of young children in need of supervision, to encourage such young children's parents or guardians to provide that needed supervision, and to limit disturbances to other residents by such children.  They also serve the concomitant business purpose of protecting against liability that might arise from injuries to such young children.

*Id.* ¶ 16.

       2.     Plaintiffs

Plaintiffs Bischoff and Dempsey each rented apartments at the Birchwood Gardens apartment complex at the time this action was filed.  UMF no. 13.  Bischoff and Dempsey are single fathers of minor children.  UMF no. 14.  In July 2014, defendant Brittain Commercial notified Bischoff and Dempsey of the termination of their tenancies at the Birchwood Gardens apartment complex, effective August 31, 2014.  UMF no. 15.

After learning of the impending termination of his tenancy, Dempsey requested assistance from Project Sentinel because he believed that he was the victim of housing discrimination.  UMF no. 16.  Project Sentinel is a non-profit fair housing organization whose organizational mission includes the promotion of equal opportunity in housing and the elimination of all forms of unlawful housing discrimination.  UMF no. 17.  Project Sentinel diverted its organizational resources to investigate Dempsey's claim of housing discrimination.  UMF no. 18.  Project Sentinel investigated Brittain Commercial's management practices and fair housing compliance at Birchwood Gardens, dispatching staff to interview tenants at the apartment complex regarding Brittain Commercial's treatment of families with children.  UMF no. 25.

Through this investigation, Project Sentinel learned of the impending termination of Bischoff's tenancy.  UMF no. 18.  On October 9, 2014, having concluded based on its investigation that Brittain Commercial had engaged in discriminatory housing practices based on familial status, Project Sentinel prepared informational materials regarding fair housing rights and sent those materials to current Birchwood Gardens tenants by first-class mail.  UMF no. 26.

3. <u>Procedural History</u>

Plaintiffs Bischoff and Dempsey filed the complaint on August 25, 2014.  ECF No. 1.  On October 10, 2014, the court granted plaintiffs' motion for a preliminary injunction.  ECF No. 20.  On October 24, 2014, defendants filed an answer to the complaint.  ECF No. 21.  On November 14, 2014, plaintiffs filed a first amended complaint, which added Project Sentinel as a plaintiff.  ECF No. 22.  Defendants filed an answer to the first amended complaint on December 5, 2014.  ECF No. 25.  On October 2, 2015, Project Sentinel filed the instant motion for partial summary judgment as to RZM's and Brittain Commercial's liability under the FHA.  ECF No. 47.  RZM and Brittain Commercial opposed the motion, ECF No. 61, and Project Sentinel replied, ECF No. 63.  As noted, the court held a hearing on the motion on November 20, 2015.

On January 29, 2016, Bischoff, Dempsey, and Project Sentinel filed their motion to amend the first amended complaint.  ECF No. 75.  Defendants opposed the motion, ECF No. 89, and plaintiffs replied, ECF No. 90.

C. <u>Project Sentinel's Standing</u>

The Supreme Court has established that the only requirement for standing to sue under the FHA is the Article III requirement of injury in fact.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 375–76 (1982) (discussing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979)).  In determining whether a fair housing organization has standing under the FHA, courts ask whether "the plaintiff [has] alleged such a personal stake in the outcome of the controversy as to warrant [the plaintiff's] invocation of federal-court jurisdiction."  *Id.* at 378–79 (citations and quotation marks omitted); *cf.* 42 U.S.C. § 3602(d) (provision of the FHA defining "person" to include "corporations" and "associations").  A fair housing organization satisfies the

1   Article III requirement if it shows a "distinct and palpable injur[y]" that is "fairly traceable" to the

2   defendant's actions.  *Havens*, 455 U.S. at 376; *see Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th

3   Cir. 1999).

4          Defendants cite two Third Circuit decisions from 1998 for the proposition that a

5   diversion of resources by a fair housing organization cannot provide a basis for Article III

6   standing.  ECF No. 61 at 14–15 (citing *Fair Hous. Council of Suburban Phil. v. Main Line Times*,

7   141 F.3d 439 (3d Cir. 1998), and *Fair Hous. Council of Suburban Phil. v. Montgomery*

8   *Newspapers*, 141 F.3d 71 (3d Cir. 1998)).  Defendants fail to address, however, two Ninth Circuit

9   decisions with facts nearly identical to those of the instant action that run contrary to their

10  argument.  In *Smith v. Pacific Properties & Development Corp.*, 358 F.3d 1097 (9th Cir. 2004),

11  and *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002), the Ninth Circuit held that an

12  organization can establish standing under the FHA by demonstrating (1) "frustration of its

13  organizational mission," and (2) "diversion of its resources to combat the particular housing

14  discrimination in question."  *Smith*, 358 F.3d at 1105; *Combs*, 285 F.3d at 905; *cf. Havens*,

15  455 U.S. at 378–79 (holding that an organization sufficiently pled standing by alleging the

16  defendants' discriminatory practices impaired its ability to provide counseling and referral

17  services).  The organizations in *Smith* and *Combs*, as in the instant action, diverted resources to

18  investigate the violations and to educate tenants about the discrimination at issue.  *Smith*,

19  358 F.3d at 1105; *Combs*, 285 F.3d at 905.  Moreover, in *Combs*, the Ninth Circuit considered the

20  Third Circuit's holding in *Montgomery Newspapers*, 141 F.3d 71, and noted that a later Third

21  Circuit decision found the diversion of organizational resources sufficient to establish standing

22  under the FHA.  *Combs*, 285 F.3d at 903 (citing *Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000)).

23         Defendants do not dispute that Project Sentinel's organizational mission includes

24  the promotion of equal opportunity in housing and the elimination of all forms of unlawful

25  housing discrimination.  *See* UMF No. 17; Bonanno Decl. ¶ 3, ECF No. 47-3.  Neither do

26  defendants dispute that Project Sentinel interviewed tenants at Birchwood Gardens to investigate

27  defendants' violations and distributed written informational materials to the tenants to counteract

28  what it viewed as discriminatory conduct by defendants.  *See* UMF Nos. 18–26; Bonanno Decl.

1 ¶¶ 5–7, 9–10.  These undisputed facts establish that defendants' discriminatory conduct has

2 frustrated and impeded Project Sentinel's fair housing mission and has caused it to divert its

3 limited organizational resources from other activities.  *See* Bonanno Decl. ¶ 4.  Project Sentinel

4 has standing to bring this action.  *See Smith*, 358 F.3d at 1105; *Combs*, 285 F.3d at 905.

5        D.     <u>Legal Standard</u>

6       A court will grant summary judgment "if . . . there is no genuine dispute as to any

7 material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

8 The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

9 resolved only by a finder of fact because they may reasonably be resolved in favor of either

10 party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

11       Rule 56 also authorizes the granting of summary judgment on part of a claim or

12 defense, known as partial summary judgment.  *See* Fed. R. Civ. P. 56(a) ("A party may move for

13 summary judgment, identifying each claim or defense—or the part of each claim or defense—on

14 which summary judgment is sought.").  The standard that applies to a motion for partial summary

15 judgment is the same as that which applies to a motion for summary judgment.  *See State of Cal.*

16 *ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998)

17 (applying summary judgment standard to motion for summary adjudication); *ARC of Cal. v.*

18 *Douglas*, No. 11-02545, 2015 WL 631426, at *3 (E.D. Cal. Feb. 13, 2015).

19       The moving party bears the initial burden of "informing the district court of the

20 basis for its motion, and identifying those portions of [the record] which it believes demonstrate

21 the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

22 (1986).  The burden then shifts to the nonmoving party to "go beyond the pleadings" and

23 "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quotation

24 marks and citation omitted).  The non-moving party "must do more than simply show that there is

25 some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio*

26 *Corp.*, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the

27 suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*,

28 477 U.S. at 247–48.

1    In deciding a motion for summary judgment, the court draws all inferences and

2    views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

3    587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

4    whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

5    issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*

6    *Co.*, 391 U.S. 253, 289 (1968)).

7        E.    Discussion

8    The FHA is a "broad remedial statute" that courts "generously construe."  *City of*

9    *Edmonds v. Wash. St. Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994).  Under the FHA, it

10   is unlawful "[t]o discriminate against any person in terms, conditions, or privileges of . . . rental

11   of a dwelling, or in the provision of services or facilities in connection therewith, because of . . .

12   familial status . . . ."  42 U.S.C. § 3604(b).  Familial status discrimination entails "discrimination

13   against families with children."  *Fair Hous. Cong. v. Weber*, 993 F. Supp. 1286, 1290 (C.D. Cal.

14   1997).  A plaintiff may bring a claim under § 3604(b) under either a disparate treatment or

15   disparate impact theory.  *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008)

16   (courts apply Title VII discrimination analysis in cases brought under the FHA).  Project Sentinel

17   here relies on a disparate treatment theory under § 3604(b).

18   When it considered plaintiffs' motion for preliminary injunction, the court applied

19   the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

20   (1973), to evaluate plaintiffs' likelihood of success on the merits.  *See* ECF No. 20 at 6–7.  The

21   court does not apply the *McDonnell* framework to Project Sentinel's motion for partial summary

22   judgment, however, because Project Sentinel now argues defendants' policies are facially

23   discriminatory.  *See Community House, Inc. v. City of Boise*, 490 F.3d 1045, 1049 (9th Cir. 2006)

24   (holding the *McDonnell* framework does not apply to facially discriminatory policies).

25        1.    Prima Facie Case

26   With respect to facially discriminatory housing policies, "a plaintiff makes out a

27   prima facie case of intentional discrimination under the [FHA] merely by showing that a

28   protected group has been subjected to explicitly differential—i.e. discriminatory—treatment."  *Id.*

9

1    at 1050 (citation omitted); *see Iniestra v. Cliff Warren Investments, Inc.*, 886 F. Supp. 2d 1161,

2    1166 (C.D. Cal. 2012).  Here, the "Brief Recap of Notes" document, which was distributed to

3    Brittain Commercial's managers, establishes guidelines for on-site resident managers to respond

4    to unsupervised children.  Espinosa Decl., Ex. D; Brittain Decl. ¶¶ 9–10.  If a manager finds a

5    "young child" of a resident unsupervised, the document establishes remedial actions, including

6    talking to the parent or guardian, contacting social services and/or the police, and evicting the

7    tenants.  Espinosa Decl., Ex. D.  Sandra Brittain's declaration provides further evidence that

8    Brittain Commercial manages Birchwood Gardens in a way to encourage parents and guardians to

9    supervise their young children.  *See* Brittain Decl. ¶ 9.

10             Brittain Commercial's policy toward unsupervised young children inherently treats

11   children differently than adults by limiting when they may use the common areas of the complex

12   to times when they are supervised by an adult.  *See Iniestra*, 886 F. Supp. 2d at 1166 (adult

13   supervision rules "explicitly discriminate against children by requiring that they—unlike adults—

14   be supervised by an adult at all times").  The policy also treats parents of young children

15   differently by subjecting them to certain consequences if their children are found unsupervised.

16   In contrast to households with children, adult-only households may use the entire premises of the

17   complex without limitation and without the risk of receiving warnings or facing eviction for

18   violating the adult supervision guidelines.  Because families with children are subjected to

19   explicitly differential treatment by Brittain Commercial, Project Sentinel has established a prima

20   facie case of facial discrimination.  *See Community House*, 490 F.3d at 1050; *cf. Blackington v.*

21   *Quiogue Family Trust*, No. 11-1670, 2013 WL 1701883, at *4 (S.D. Cal. Apr. 18, 2013) ("[T]he

22   bar for establishing that a rule is 'facially discriminatory' is extremely low.").

23             Defendants advance a number of reasons why the guidelines are not facially

24   discriminatory: they are not a formalized, mandatory "policy" or rental provision; they only limit

25   young children to the extent the children are unsupervised; they apply only to young children;

26   they have nondiscriminatory justifications; and they originated from a "neutral" source.  In

27   advancing these arguments, defendants misconstrue the term "discriminatory."  As stated above,

28   to establish a prima facie case of facial discrimination, a plaintiff must show only that the

1    defendant subjects a protected group to explicitly differential treatment.  *See Community House*,

2    490 F.3d at 1050.  Defendants do not dispute that Brittain Commercial treats unsupervised young

3    children and parents of unsupervised young children differently than it treats adults without

4    children.  Accordingly, plaintiff has established a prima facie case of facial discrimination.

5              Moreover, although the guidelines do not completely prohibit young children from

6    using the premises or becoming residents, "[l]imiting the use of privileges and facilities

7    associated with a dwelling because of familial status is a violation of [§ 3604(b)]," *Weber*,

8    993 F. Supp. at 1292 (citing 24 C.F.R. § 100.65).  Finally, it is irrelevant whether the guidelines

9    originated from a "neutral" source or were intended to achieve legitimate goals.  The Supreme

10   Court has held that "the absence of a malevolent motive does not convert a facially discriminatory

11   policy into a neutral policy with a discriminatory effect."  *Int'l Union, United Auto., Aerospace &*

12   *Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) (Title

13   VII).  Whether a policy "involves disparate treatment through explicit facial discrimination does

14   not depend on why the [entity] discriminates but rather on the explicit terms of the

15   discrimination."  *Id*.  Defendants' arguments are more properly analyzed as nondiscriminatory

16   justifications for facial discrimination in the next step of the court's analysis.

17              2.    Defendants' Justifications

18                   a)    Applicable Legal Standard

19              Once a plaintiff has made out a prima facie case of facial discrimination, the

20   burden shifts to the defendant to justify the differential treatment.  *See Community House*,

21   490 F.3d at 1050 (discussing *Johnson Controls, Inc.*, 499 U.S. 187); *see also Larkin v. State of*

22   *Mich. Dep't of Soc. Servs*., 89 F.3d 285, 290 (6th Cir. 1996).  The Ninth Circuit first adopted the

23   standard for analyzing a defendant's justifications under the FHA in *Community House*, 490 F.3d

24   1045.  In *Community House*, the Ninth Circuit found a homeless shelter's men-only policy

25   facially discriminated against women and families under the FHA.  *See id.* at 1048.  The court

26   then acknowledged the Ninth Circuit had not previously adopted a standard for evaluating a

27   defendant's justification for discrimination under the FHA, and circuits that had addressed the

28   issue were split.  *Id.* at 1050.  The Eighth Circuit employs the same standard it applies to claims

1    under the Equal Protection Clause; thus, it applies rational basis review to claims by families and

2    disabled persons.  *See id.* (citing *Oxford House–C v. City of St. Louis*, 77 F.3d 249, 252 (8th Cir.

3    1996), and *Familystyle of St. Paul v. City of St. Paul*, 923 F.2d 91, 94 (8th Cir. 1991)).  In

4    contrast, the Sixth and Tenth Circuits apply a "more searching method of analysis," which allows

5    facial discrimination under the FHA only when (1) "the restriction benefits the protected class,"

6    or when (2) "it responds to legitimate safety concerns raised by the individuals affected, rather

7    than being based on stereotypes." *Id.* (citing *Larkin*, 89 F.3d at 290, and *Bangerter v. Orem City*

8    *Corp.*, 46 F.3d 1491, 1503–04 (10th Cir. 1995)).  The Ninth Circuit in *Community House* adopted

9    the standard used by the Sixth and Tenth Circuits, finding it more in line with the Supreme

10   Court's analysis in *Johnson Controls*, 499 U.S. 187, and because the FHA expressly protects

11   certain classes of persons, such as families and disabled persons, that are not protected classes for

12   constitutional purposes.  *Community House*, 490 F.3d at 1050.

13            Project Sentinel cites several district court cases that do not apply the *Community*

14   *House* standard.  Instead, those cases apply a different formulation of heightened scrutiny,

15   namely, whether a policy is the least restrictive means of achieving a compelling business

16   necessity.  *See, e.g.*, *Iniestra*, 886 F. Supp. 2d at 1167; *Pack v. Fort Wash. II*, 689 F. Supp. 2d

17   1237, 1243 (E.D. Cal. 2009) (citing *Fair Hous. Council of Orange County, Inc. v. Ayres*, 855 F.

18   Supp. 315 (C.D. Cal. 1994)).  Prior to hearing, the court directed the parties to prepare for

19   argument on whether the standard articulated in *Community House*, or in *Iniestra*, applies here.

20   At hearing, plaintiff argued there is no practical difference between the two standards, because

21   narrow tailoring is necessary to show the policy in fact benefits the protected class and is not

22   pretextual under the *Community House* standard.  In addition, the Sixth and Tenth Circuit

23   decisions upon which the *Community House* court relied emphasize the importance of tailoring.

24   *See Larkin*, 89 F.3d at 290; *Bangerter*, 46 F.3d at 1503–04 (restrictions that purport to benefit the

25   protected class are acceptable only where they are narrowly tailored and "the benefit to the

26   handicapped in their housing opportunities clearly outweigh[s] whatever burden may result to

27   them").  Defendants responded that the two standards are not similar, because the *Community*

28   *House* court did not require that the policy be the least restrictive means of achieving the benefit

12

1    to the protected class or responding to the legitimate safety concerns.  Defendants argued the

2    court cannot apply the standard articulated in *Iniestra*, because it is inconsistent with *Community*

3    *House*, which is binding precedent.

4                Having carefully considered the parties' positions and the relevant opinions, the

5    court finds *Community House* governs this action and implicitly requires heightened tailoring, but

6    does not require that defendants' policy be the least restrictive means of achieving the allowed

7    interests.  The court views the cited district court cases as persuasive authority to the extent they

8    are consistent with *Community House*.

9                b)    <u>Analysis</u>

10               Applying the *Community House* standard to this case, defendants must show their

11   facially discriminatory adult supervision policy benefits families with young children or responds

12   to legitimate safety concerns that are not based on stereotypes.  *Community House*, 490 F.3d at

13   1050.  In their opposition, defendants contend the guidelines are justified to protect the safety and

14   well-being of young children, to limit noise and disturbances to other residents, and to protect

15   themselves from liability if the children are injured.  *See* ECF No. 61 at 13; Brittain Decl. ¶¶ 6–9.

16   Of these asserted justifications, only the first is permissible under the *Community House* standard;

17   the other two justifications do not respond to legitimate safety concerns, and defendants have not

18   shown that they otherwise benefit families with young children.  *See Community House*, 490 F.3d

19   at 1050.

20               The only evidence defendants offer to support their asserted safety justification is

21   Sandra Brittain's declaration, which states:

22               . . . The Complex is fronted by a busy city street [Bell Street] to
                 which young children can gain access if not supervised.  In the
23               Complex' [sic] courtyard common area, there are potential
                 climbing-and-falling hazards such as tables and trees, and also
24               potential burning hazards by the outdoor grilling equipment.  And
                 there is a fenced swimming pool in the center of the complex.
25               There was one fairly recent tragic incident that illustrates how
                 unsupervised young children can be at risk in an apartment complex
26

27   /////

28   /////

13

1  setting.  This incident took place at another apartment complex that
2  Brittain Commercial manages.  In August 2014, a small 3-year-old
   child drowned while being left at the pool by the guest of a resident,
3  neither of whom was watching the child.

4  Brittain Decl. ¶ 6.

5          This evidence does not create a triable dispute as to whether defendants'

6  discrimination is justified under the FHA.  Although there is not much case law interpreting

7  *Community House*, especially in the context of familial discrimination, the court interprets the

8  decision as requiring some degree of heightened scrutiny.  As discussed above, the language of

9  the *Community House* standard itself makes clear the safety concerns must be "legitimate" and

10  must not be based on stereotypes.  *See Community House*, 490 F.3d at 1050.  Moreover, the court

11  in *Community House* adopted the Sixth and Tenth Circuits' "more searching method of analysis"

12  over the Eighth Circuit's rational basis review.  *Id.*

13          Here, defendants' articulated safety concerns may be entirely well-meaning, but

14  are based largely on unfounded speculation.  Defendants' guidelines are not adequately tailored to

15  respond to those purported concerns.  *Cf.* H.R. Rep. No. 100–711, 100th Cong., 2d Sess. 13,

16  *reprinted in* 1988 U.S. Code Cong. & Admin. News 2173, 2179 ("Generalized perceptions about

17  disabilities and unfounded speculations about threats to safety are specifically rejected as grounds

18  to justify exclusion.").  With respect to the courtyard at issue in this case, defendants have not

19  provided any grounds for concluding the tables and trees raise legitimate safety concerns

20  requiring regulation by Brittain Commercial.  The city street, fenced swimming pool, and grilling

21  equipment could more plausibly pose safety concerns for young children, but the adult

22  supervision guidelines extend beyond these areas and extend to activities other than swimming or

23  grilling.  The guidelines broadly direct managers to take action if they "have a young child not

24  being supervised," without mention of any of these purported dangers.  A number of district court

25  cases, though applying a different formulation of heightened scrutiny than that of *Community*

26  *House*, have found similar adult supervision policies to be overbroad means of addressing safety

27  concerns under the FHA.  *See Iniestra*, 886 F. Supp. 2d at 1168 (rules requiring adult supervision

28  at all times are overbroad); *Pack*, 689 F. Supp. 2d at 1243–44 (requirement that children ages ten

14

1    and under be supervised by an adult when outside is "overbroad and unduly restrictive"); *United*
2    *States v. Plaza Mobile Estates*, 273 F. Supp. 2d 1084, 1092–93 (C.D. Cal. 2003) (rule prohibiting
3    children from walking around the mobile home park without adult supervision was an overbroad
4    attempt to ensure the safety of children).

5              The court is not persuaded by defendants' argument that the guidelines are lawful
6    under the FHA because they are "flexible."  Although Sandra Brittain states in her declaration
7    that "[t]here is purposely no stated age [in the guidelines] so that a manager may exercise his or
8    her discretion in addressing varying situations as circumstances warrant," Brittain Decl. ¶ 17,
9    defendants have not submitted any evidence that managers were told to apply the policy only if a
10   young child's safety was threatened, or that managers in practice applied the policy in such a
11   way.  Other parts of Ms. Brittain's declaration suggest the policy was not so limited.  For
12   example, she states one of the "primary goals" of the guidelines is to limit disturbances to other
13   residents by children, which likely encompasses situations beyond those in which a child's safety
14   is legitimately threatened.  *Id.* ¶ 16.

15             For the foregoing reasons, defendants have not created a triable dispute as to
16   whether their policy benefits families with children or responds to legitimate safety concerns that
17   are not based on stereotypes.  The court GRANTS summary judgment as to Brittain
18   Commercial's liability under the FHA.

19                      3.      Defendant RZM's Liability

20             Where a property manager violates fair housing requirements, the property owner
21   is vicariously liable for those violations.  *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("[I]t is
22   well established that the [FHA] provides for vicarious liability."); *Llanos v. Estate of Coehlo*,
23   24 F. Supp. 2d 1052, 1061 (E.D. Cal. 1998) ("The discriminatory conduct of an apartment
24   manager or rental agent is, as a general rule, attributable to the owner and property manager of the
25   apartment complex, both under the doctrine of respondeat superior and because the duty to obey
26   the law is non-delegable." (citation omitted)).

27             Defendants do not dispute that Brittain Commercial manages Birchwood Gardens
28   on RZM's behalf under a written property management agreement.  Defendants also do not

                                                    15

1    contest Project Sentinel's conclusion that RZM is therefore vicariously liable for Brittain

2    Commercial's violation of the FHA.  The court GRANTS summary judgment as to RZM's

3    liability under the FHA.  The court now turns to plaintiffs' motion for leave to amend the first

4    amended complaint.

5    II.    MOTION FOR LEAVE TO AMEND

6            Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely

7    give leave [to amend its pleading] when justice so requires," and the Ninth Circuit has "stressed

8    Rule 15's policy of favoring amendments," *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149,

9    1160 (9th Cir. 1989).  "In exercising its discretion [regarding granting or denying leave to

10   amend,] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on

11   the merits rather than on the pleadings or technicalities.'"  *DCD Programs, Ltd. v. Leighton*,

12   833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.

13   1981)).  However, "liberality in granting leave to amend is subject to several limitations . . . .

14   includ[ing] undue prejudice to the opposing party, bad faith by the movant, futility, and undue

15   delay." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1058 (9th Cir. 2011)

16   (internal citations and quotation marks omitted).  In addition, a court should look to whether the

17   plaintiff has previously amended the complaint, as "the district court's discretion is especially

18   broad 'where the court has already given a plaintiff one or more opportunities to amend [its]

19   complaint.'"  *Ascon*, 866 F.2d at 1161 (quoting *Leighton*, 833 F.2d at 186 n.3).

20           Plaintiffs seek leave to amend their first amended complaint to add allegations and

21   a claim under 42 U.S.C. § 3604(c).  Section 3604(c) provides that it is unlawful

22           [t]o make, print, or publish, or cause to be made, printed, or
             published any notice, statement, or advertisement, with respect to
23           the sale or rental of a dwelling that indicates any preference,
             limitation, or discrimination based on . . . familial status, . . . or an
24           intention to make any such preference, limitation, or discrimination.

25   42 U.S.C. § 3604(c).  Plaintiffs contend this claim is based on a statement in Sandra Brittain's

26   declaration that the allegedly discriminatory "Brief Recap of Notes" document was distributed to

27   Brittain Commercial's on-site resident managers.  *See* Mot. Amend at 4, ECF No. 75-1 (citing

28

                                              16

1   Brittain Decl. ¶ 15).  Plaintiffs previously amended the complaint once as a matter of course.

2   ECF No. 22.

3          Defendants oppose plaintiffs' motion, arguing the proposed amendment would be

4   futile because their policy does not discriminate on the basis of familial status.  ECF No. 89.

5   Defendants' opposition raises many of the same arguments as their opposition to plaintiff's

6   motion for partial summary judgment.

7          For the reasons discussed above, the court is not persuaded by defendants'

8   arguments of futility.  In addition, it does not appear that plaintiffs' request is brought in bad

9   faith, would cause undue delay, or would cause defendant undue prejudice.  *See Cafasso*,

10  637 F.3d at 1058.  Because Rule 15(a)(2) states that leave to amend should be given freely, and

11  plaintiffs have shown good cause, the court GRANTS plaintiffs' request for leave to amend the

12  first amended complaint.

13  III.    CONCLUSION

14         For the foregoing reasons, the court:

15         1.     GRANTS Project Sentinel's motion for partial summary judgment as to the

16                liability of Brittain Commercial and RZM under 42 U.S.C. § 3604(b); and

17         2.     GRANTS plaintiffs' motion for leave to amend the first amended

18                complaint.  Plaintiffs shall file the proposed second amended complaint, ECF

19                No. 75, as a separate document within fourteen (14) days of the date this order is

20                filed.

21         3.     Defendants are ORDERED to partially redact Dempsey's date of birth

22                information contained in Exhibit 4 to the Brittain Declaration as required by Local

23                Rule 140(a) within fourteen (14) days of the date this order is filed.

24         This resolves ECF Nos. 47 and 75.

25         IT IS SO ORDERED.

26  DATED:  April 29, 2016.

27

28  _____
    UNITED STATES DISTRICT JUDGE

17