1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SCOTT BISCHOFF, et al.,                    No.  2:14-cv-01970-KJM-CKD

12                  Plaintiffs,

13          v.                                   ORDER

14    SANDRA BRITTAIN, et al.,

15                  Defendants.

16

17

18          Plaintiffs Scott Bischoff, Leron Dempsey, and Project Sentinel, Inc. ("Project

19    Sentinel") filed this action against defendants RZM Investments Enterprise, LLC ("RZM"), J.A.

20    Brittain, Limited ("Brittain Commercial"), Keith Johnson, and Sandra Brittain, alleging that their

21    housing practices discriminate based on familial status.  Several motions are currently before the

22    court.  Defendants move for reconsideration of the court's April 29, 2016 order granting Project

23    Sentinel's motion for partial summary judgment.  Plaintiffs move for partial summary judgment

24    on other claims and for an interim award of attorney's fees and costs.  Each motion is opposed.

25    The court held a hearing on August 19, 2016, at which Todd Espinosa appeared for plaintiffs, and

26    Ryan Abernethy and Daniel Costa appeared for defendants.  As explained below, the court

27    DENIES defendants' motion for reconsideration, GRANTS IN PART and DENIES IN PART

28

                                          1

1    plaintiffs' motion for partial summary judgment, and DENIES without prejudice plaintiffs'

2    motion for attorney's fees and costs.

3    I.      BACKGROUND

4       A.     Statutory Background

5        Plaintiffs bring claims under the federal Fair Housing Act ("FHA"), 42 U.S.C.

6    § 3601 *et seq.*, and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51 *et*

7    *seq.* The FHA is a "broad remedial statute" that courts "generously construe." *City of Edmonds*

8    *v. Wash. St. Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994). The FHA makes it unlawful

9    "[t]o discriminate against any person in terms, conditions, or privileges of sale or rental of a

10    dwelling, or in the provision of services or facilities in connection therewith, because of . . .

11    familial status . . . ." 42 U.S.C. § 3604(b). Familial status discrimination entails "discrimination

12    against families with children." *Fair Hous. Cong. v. Weber*, 993 F. Supp. 1286, 1290 (C.D. Cal.

13    1997). A plaintiff may bring a claim under § 3604(b) under either a disparate treatment or

14    disparate impact theory. *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008)

15    (courts apply Title VII discrimination analysis in cases brought under the FHA). Plaintiffs here

16    rely on a disparate treatment theory.

17        The FHA also makes it unlawful

18
19
20

> [t]o make, print, or publish, or cause to be made, printed, or
> published any notice, statement, or advertisement, with respect to
> the sale or rental of a dwelling that indicates any preference,
> limitation, or discrimination based on . . . familial status, . . . or an
> intention to make any such preference, limitation, or discrimination.

21    42 U.S.C. § 3604(c).

22        The Unruh Act provides, in relevant part,

23
24
25

> All persons within the jurisdiction of [California] are free and
> equal, and . . . are entitled to the full and equal accommodations,
> advantages, facilities, privileges, or services in all business
> establishments of every kind whatsoever.

26    Cal. Civ. Code § 51(b). The prohibitions of the Unruh Act include "discriminating in the sale or

27    rental of housing based upon age." *Id.* § 51.2(a).

28

B.      Evidentiary Objections

The court overrules defendants' objections to plaintiffs' citation to the court's May 2, 2016 order, Defs.' Objection Nos. 1–4 & 6–9, ECF No. 116-5, because they are not in fact evidentiary objections.  Moreover, plaintiffs' statement of undisputed facts and the cited portions of the court's prior order each cite to materials in the record that independently support the respective facts.  *See* Statement of Undisputed Material Facts ("UMF") Nos. 9, 10, 12, 13, 20, 27, 28, 35, ECF Nos. 47-2 & 61-1.  The court also overrules defendants' objection as to Keith Johnson's personal knowledge, Defs.' Objection No. 5.  Johnson properly provided testimony based on his experience as a resident manager of the complex.  *See* Johnson Dep. 113, Espinosa Decl. Supp. MSJ Ex. C, June 3, 2016, ECF No. 110-3 ("Espinosa Decl. II") ("Q. In your experience as a resident manager, what have been the bases of situations that have led to evictions of your tenants?").

C.      Relevant Facts

The court has examined the record to determine whether the submitted facts are supported and whether there exists a genuine dispute as to material facts.  The following facts are undisputed, unless otherwise noted.

1.      Background

The Birchwood Gardens apartment complex ("Birchwood Gardens") is located at 1225 Bell Street, Sacramento, California.  UMF No. 2.  Defendant RZM owns Birchwood Gardens.  UMF No. 1.  Defendant Brittain Commercial manages Birchwood Gardens on RZM's behalf under a written property management agreement.  UMF No. 4.  Defendant Sandra Brittain is the Property Director of Brittain Commercial, and defendant Keith Johnson is the resident on-site manager for Birchwood Gardens.  UMF No. 6.  Brittain and Johnson are both employed by Brittain Commercial.  UMF No. 7.

Plaintiffs Bischoff and Dempsey each rented apartments at Birchwood Gardens at the time this action was filed.  UMF No. 19.  Bischoff and Dempsey are single fathers of minor children.  UMF No. 20.  Project Sentinel is a non-profit fair housing organization whose

1    organizational mission includes the promotion of equal opportunity in housing and the

2    elimination of all forms of unlawful housing discrimination.  UMF No. 26.

3             Birchwood Gardens comprises approximately thirty apartments that surround a

4    common courtyard area with a fenced swimming pool.  UMF No. 2; Brittain Decl. Opp'n SJ ¶¶ 5,

5    7, Oct. 28, 2015, ECF Nos. 61-3 & 108 ("Brittain Decl. I").  The complex has a parking lot with

6    fifty parking spots that is located only a "few paces" away from the courtyard area.  Brittain Decl.

7    Opp'n SJ ¶ 14, July 8, 2016, ECF No. 116-2 ("Brittain Decl. II").  A large gate separates the

8    parking lot from the street in front of the complex.  *Id.*  The gates are electronically operated and

9    take about a minute to open and close when a vehicle passes through.  *Id.*  The gate is kept open

10   continuously from 2:00 p.m. to 6:00 p.m. Monday through Friday whenever there is a vacancy in

11   the complex.  *Id.*; Miller Dep. 154–55, Abernethy Decl. Ex. B, ECF No. 116-8.  Robert Miller,

12   plaintiffs' expert in the field of property management, testified that leaving the gate open

13   jeopardizes the safety of the children in the building.  Miller Dep. 69; *see id.* at 223–25 ("Brittain

14   has put . . . the children in a [sic] harm's way . . . . [T]hese children would not be in harm's way if

15   you had done these things to make sure that the children were in a safe place.").

16                    2.      "Brief Recap of Notes" Document and Related Guidance

17           Brittain Commercial's resident on-site managers receive training, including

18   "Resident Relations" training, at seminars provided by independent experts.  Brittain Decl. I

19   ¶¶ 11–13; *see* Espinosa Decl. Supp. MSJ Ex. B (Certificates of Completion), Oct. 2, 2015, ECF

20   No. 47-4 ("Espinosa Decl. I").  Defendant Brittain prepared a document titled "Brief Recap of

21   Notes from the following classes:" ("'Brief Recap of Notes' document") on Brittain Commercial

22   letterhead that summarizes several training seminars and provides guidelines for resident

23   managers to follow.  Espinosa Decl. I Ex. D; Brittain Dep. 106, Feb. 8, 2016, Espinosa Decl. II

24   Ex. A; Brittain Decl. I ¶¶ 10, 15.  Under the heading "Resident Relations," the document states, in

25   relevant part,

26           Handling unsupervised children:

27           1. If you have a young child not being supervised, walk the child
             home and speak with whoever is in charge.
28

2. Have your supervisor write a letter after you speak with the person in the apartment, which will alert whoever opens the mail, that you are worried over the child's safety—you are now showing safety concerns and are not attacking their parenting skills or being discriminatory.

3. If nothing changes and the child is once again outside unsupervised, notify your supervisor who will now contact social services and/or the police.

4. If nothing still changes, we will then consider eviction and note the reasoning on their notice.

Espinosa Decl. I Ex. D.  The document was distributed to all resident on-site managers for their reference in or about 2014 or 2015.  Brittain Dep. 106–08, Feb. 8, 2016; Brittain Decl. I ¶ 15; Johnson Dep. 100–01, 105.  It also was distributed to everyone in Brittain Commercial's main office.  Brittain Dep. 107, Feb. 8, 2016.

Defendant Brittain explained the policy behind the guidelines in her declaration in opposition to Project Sentinel's prior motion for partial summary judgment, on which plaintiffs rely here without objection:

It is our understanding and belief that young children require regular adult supervision . . . . In managing Birchwood Gardens, we believe that it is within the scope of our management role to encourage . . . parents and guardians to exercise such supervision for the safety of their young children and for the benefit of other residents.  We believe that such supervision is necessary so that young children who are tenant residents of Birchwood Gardens will not be at risk of injuring themselves or other residents, or engaging in disruptive or destructive activities.  In an effort to promote such supervision and discourage parent-guardian neglect, we developed internal suggested guidelines for managers to use in their discretion as circumstances might warrant.

Brittain Decl. I ¶ 9.

The primary goals of these guidelines are to protect the safety and well-being of young children in need of supervision, to encourage such young children's parents or guardians to provide that needed supervision, and to limit disturbances to other residents by such children.  They also serve the concomitant business purpose of protecting against liability that might arise from injuries to such young children.

*Id.* ¶ 16.

1    Defendant Johnson testified that he has never been "instructed" to follow the four

2    steps outlined in the "Brief Recap of Notes" document. Johnson Dep. 94–95. Throughout his

3    deposition, Johnson objected to the characterization of the guidelines as "instructions," but

4    admitted to having received the document. *Id*. at 94–95, 102–10. Johnson's understanding was

5    "[t]hat they were to be used as guidelines and that [he] should adhere to them as closely as

6    possible." *Id.* at 104–05. He explained that his only responsibilities are to take unsupervised

7    children home and to notify the main office if the problem continues. *Id.* at 105–09. It is the

8    main office's responsibility to take any additional steps described in the document. *Id.*

9    Johnson has taken children home because they were unsupervised on at least two

10   occasions. *Id.* at 95–96. Once, he took Dempsey's children home because they were "young

11   children" and were playing in the barbecue area, which is not visible from Dempsey's apartment.

12   *Id.* at 96. He believed Dempsey's children were between the ages of three and six or seven. *Id.*

13   Johnson considers children up to the ages of eight or nine to be "young." *Id.* at 78. On another

14   occasion, Johnson took Bischoff's then three-year-old son home because he was playing with a

15   stick in the outside common area right below Bischoff's apartment "without anyone visible

16   nearby." *Id.* at 96–100; *see* UMF No. 21.

17   According to Brittain's most recent declaration opposing plaintiffs' pending

18   motion for partial summary judgment, defendants have never sent a letter to tenants, contacted

19   social services or the police, or evicted a tenant due to failure to supervise a child. Brittain

20   Decl. II ¶ 7. She claims the four-step guidelines "[*were*] *never implemented or enforced by*

21   *anyone* at Brittain Commercial." *Id.* (emphasis in original).

22   In addition to the "Brief Recap of Notes" document, Brittain Commercial provides

23   resident managers with a written Resident Managers Standard Operations Manual, which states

24   that "[f]ailure to properly supervise children is grounds for termination of the tenancy." Brittain

25   Dep. 99, 157–58 & Ex. 21, Mar. 23, 2016, Espinosa Decl. II Ex. D. According to Brittain, this

26   does not refer to children "merely being unsupervised," but instead refers to violations of the

27   lease agreement, described below, such as "loud and boisterous activity." Brittain Decl. II ¶ 13.

28   When Johnson was asked what type of serial lease agreement violations have led to evictions, he

1   identified "unsupervised children" as one of the violations "that come[s] to mind."  Johnson

2   Dep. 113.  In his declaration in opposition to plaintiffs' pending motion for partial summary

3   judgment, he submits he "was referring to tenants who were evicted due to their children's

4   disruptive behavior, disturbing of the peace, physically assaulting tenants and the like,"  rather

5   than "because a child was simply on the property unattended."  Johnson Decl. Opp'n SJ ¶ 4, ECF

6   No. 116-3.  Brittain is the only person at Brittain Commercial authorized to issue an eviction

7   notice or to commence eviction proceedings.  Brittain Decl. II ¶ 8.

8                    3.      Terms of the Lease Agreement

9            Dempsey and Bischoff each executed a written lease agreement with Brittain

10  Commercial.  Johnson Decl. Opp'n TRO Ex. 2 ("Dempsey Lease Agreement") at 34, ECF

11  No. 13-2; Johnson Decl. Opp'n TRO Ex. 8 ("Bischoff Lease Agreement") at 33, ECF No. 13-9.

12  Section 12 of the lease agreements, titled "Conduct of Tenants & Guests," provides, in relevant

13  part,

14          Neither Tenant nor any invitee, guest or family member of the
            Tenant shall . . . create a nuisance or otherwise interfere with the
15          quiet use and enjoyment of other residents or neighbors . . . .

16          . . . .

17          Loud boisterous activity is prohibited at all times . . . .

18          Complaints from your neighbors . . . may result in a termination of
            your tenancy . . . .
19

20  Dempsey Lease Agreement 11–12; Bischoff Lease Agreement 10–11.  When there are noise

21  complaints, the on-site manager gives the offending resident either a written notice or a verbal

22  warning.  Brittain Decl. I ¶ 8.  Noise complaints with respect to minors are handled in the same

23  manner as those arising from adults.  *Id.*

24          Section 7 of the lease agreements, titled "No Assignment or Subletting," provides,

25  in relevant part,

26          Unless written permission is given in advance by the Landlord, the
            Tenant shall not assign, transfer, mortgage or hypothecate the
27          Rental Agreement in whole or in any part or any interest therein,
            nor shall the Tenant sublease or sublet the premises or any part of
28          any   portion   thereof,   either   voluntarily   or   by   operation   of

                                                  7

law. . . . Anyone other than the authorized Tenants listed above who resides or stays overnight at the premises more than three (3) days

in any thirty day period shall be considered an unauthorized sub-tenant and an incurable violation of the Rental Agreement. . . .

Dempsey Lease Agreement 8; Bischoff Lease Agreement 7.

4.      Complaints and Attempted Eviction

The remaining facts are provided as background for understanding the parties' arguments, although they do not affect the court's resolution of the pending motions.

In May and June 2014, Brittain Commercial management received several verbal and written complaints from other residents about Dempsey and his guests making excessive noise and occupying the entire pool area at the complex. *See* Johnson Decl. Opp'n TRO ¶¶ 11–19, ECF No. 13. On May 12, 2014, after Dempsey received a written warning notice for a noise violation, he entered Johnson's office and engaged in what Johnson describes as "threatening" behavior. Johnson Dep. 185–87, ECF No. 116-9; *see also* Johnson Decl. Opp'n TRO ¶13.

On June 30, 2014, Bischoff received a written warning notice arising from a verbal complaint by a resident that his son was blocking access to walkways and stairs and engaging in "loud, boistrous [sic] behavior." Johnson Decl. Opp'n TRO Ex. 9 (Warning Notice); Yellen Decl. Opp'n SJ ¶¶ 3–5, ECF No. 116-4; Bischoff Dep. 181. In July 2014, Bischoff allowed a friend and his son to stay with him in his apartment on and off for three weeks in violation of Section 7 of the lease agreement. Bischoff Dep. 85–86, 195–96, ECF No. 116-7; Brittain Decl. II ¶ 10; UMF Nos. 45 & 46. Bischoff also violated the lease agreement by allowing the friend to receive mail at his apartment. Bischoff Dep. 216; UMF No. 46.

Later that month, in late July 2014, Brittain Commercial notified Bischoff and Dempsey of the termination of their tenancies at Birchwood Gardens, effective August 31, 2014. UMF No. 23. Brittain testified that she decided to issue Dempsey a notice of termination of tenancy principally because he "threaten[ed]" and "intimidat[ed]" Johnson. Brittain Decl. II ¶ 9; Brittain Dep. 44–48, Mar. 23, 2016. She testified she decided to issue Bischoff a notice of termination of tenancy principally because he kept unauthorized guests in his apartment. Brittain Dep. 48–54, Mar. 23, 2016; Brittain Decl. II ¶ 10.

1      In her declaration opposing plaintiffs' request for sanctions filed in connection

2   with the court's October 15, 2016 discovery order, Brittain stated plaintiffs' "instances of parental

3   neglect or derelictions" were among the "last straws" leading up to their attempted evictions.

4   Brittain Decl. Opp'n Mot. Sanctions ¶ 4, ECF No. 70-2.  In her later-filed declaration opposing

5   the pending motion for partial summary judgment, she explained that she was referring to the

6   complaints defendants received about plaintiffs' children causing excessive noise and blocking

7   access to the walkways and stairs.  Brittain Decl. II ¶ 12.  She said, "Plaintiffs' children merely

8   being unsupervised . . . by itself is not a violation of the tenancy agreement and was not even a

9   consideration for Plaintiffs' evictions in any way . . . ."  *Id.*

10      D.      Procedural Background

11      Bischoff and Dempsey filed a complaint in this action on August 25, 2014.  ECF

12   No. 1.  On August 29, 2014, the court approved the parties' stipulated temporary restraining

13   order.  ECF No. 8.  On October 10, 2014, the court granted plaintiffs' motion for a preliminary

14   injunction and preliminarily ordered defendants to allow Dempsey and Bischoff to remain in their

15   apartments so long as they continued paying their monthly rent.  ECF No. 20.  On October 24,

16   2014, defendants filed an answer to the complaint.  ECF No. 21.  On November 14, 2014,

17   plaintiffs filed a first amended complaint, which added Project Sentinel as a plaintiff.  ECF

18   No. 22.  Defendants filed an answer to the first amended complaint on December 5, 2014.  ECF

19   No. 25.

20      On April 20, 2015, Bischoff gave notice to defendants that he intended to vacate

21   his apartment on May 2.  Three days later, he attempted to withdraw his notice.  *See* Espinosa

22   Decl. Ex. C (April 24, 2015 Letter), ECF No. 111-3.  The following day, on April 24, defendants'

23   counsel informed plaintiffs' counsel that defendants refused to accept Bischoff's withdrawal of

24   his notice, *id.*, so Bischoff vacated his apartment on May 2, 2015, *id.* Ex. D (Move-In/Move-Out

25   Itemized Statement).  Dempsey continues to reside at Birchwood Gardens and is protected by the

26   court's preliminary injunction.

27      On October 2, 2015, Project Sentinel filed a motion for partial summary judgment

28   as to RZM's and Brittain Commercial's liability under 42 U.S.C. § 3604(b) for their allegedly

9

1  facially discriminatory "Brief Recap of Notes" policy.  ECF No. 47 ("Prev. MSJ").  The court

2  held a hearing on the motion on November 20, 2015.  On January 29, 2016, Bischoff, Dempsey,

3  and Project Sentinel filed a motion to amend the first amended complaint to add allegations and a

4  claim under 42 U.S.C. § 3604(c).  ECF No. 75.  On May 2, 2016, the court issued an order

5  granting Project Sentinel's motion for partial summary judgment and granting plaintiffs leave to

6  amend the complaint.  ECF No. 105 ("Prev. Order").  Plaintiffs filed the operative second

7  amended complaint, ECF No. 106 ("Second Am. Compl."), and defendants filed an answer to that

8  complaint, ECF No. 109.  The second amended complaint asserts claims for violations of 42

9  U.S.C. §§ 3604(b), 3604(c), and 3617, and California Civil Code sections 51 and 51.2.  On June

10  3, 2016, plaintiffs filed the instant motion for partial summary judgment and motion for interim

11  attorney's fees and costs.  Pls.' Mot. Summ. J. ("MSJ"), ECF No. 110; Pls.' Mot. Atty's Fees

12  ("Atty's Fees Mot."), ECF No. 111.  Defendants opposed the motions.  Opp'n SJ, ECF No. 116;

13  Opp'n Atty's Fees, ECF No. 117.  Plaintiffs replied.  Reply SJ, ECF No. 120; Reply Atty's Fees,

14  ECF No. 121.

15        On July 22, 2016, defendants filed a motion for reconsideration of the court's May

16  2, 2016 order granting partial summary judgment for Project Sentinel.  Defs.' Mot. Recons., ECF

17  No. 119.  Plaintiffs opposed the motion, Opp'n Recons., ECF No. 123, and defendants replied,

18  Reply Recons., ECF No. 124.[1]

19        The court first considers defendants' motion for reconsideration, and then turns to

20  plaintiffs' motion for partial summary judgment and motion for interim attorney's fees and costs.

21  II.    MOTION FOR RECONSIDERATION

22        A.    Prior Order

23        In its prior order, the court applied the burden-shifting framework for facially

24  discriminatory policies established by the Ninth Circuit in *Community House, Inc.*, 490

25  ───────────────

26  [1] The court DENIES defendants' request for an extension of the court's page limitations,
Reply Recons. 1 n.1, and disregards the last five pages of the reply brief, because defendants have
not shown good cause for the request.  *See* Standing Order 4, ECF No. 3-1 ("Only in rare

27  instances and for good cause shown will the court grant an application to extend these page
limitations.").

28

1    F.3d 1045.  *See* Prev. Order 9–13.  Under this framework, a plaintiff first must make out a prima

2    facie case of intentional discrimination.  490 F.3d at 1050.  A plaintiff can satisfy this burden

3    "merely by showing that a protected group has been subjected to explicitly differential—i.e.

4    discriminatory—treatment."  *Id.* (citation omitted); *see Iniestra v. Cliff Warren Invs., Inc.*,

5    886 F. Supp. 2d 1161, 1166 (C.D. Cal. 2012).  Once a plaintiff has established a prima facie case,

6    the burden shifts to the defendant to justify the differential treatment.  *See Community House*,

7    490 F.3d at 1050 (discussing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of*

8    *Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991)); *see also Larkin v. State of Mich.*

9    *Dep't of Soc. Servs.*, 89 F.3d 285, 290 (6th Cir. 1996).  Facial discrimination under the FHA is

10   allowed only when (1) "the restriction benefits the protected class," or when (2) "it responds to

11   legitimate safety concerns raised by the individuals affected, rather than being based on

12   stereotypes."  *Community House, Inc.*, 490 F.3d at 1050.

13           Applying these standards, the court first found Brittain Commercial's policy

14   requiring adult supervision of young children "inherently treats children differently than adults by

15   limiting when they may use the common areas of the complex to times when they are supervised

16   by an adult."  Prev. Order. 10.  The court also found the four-step "Brief Recap of Notes" policy

17   "treats parents of young children differently by subjecting them to certain consequences if their

18   children are found unsupervised."  *Id.*  Because Brittain Commercial's child supervision policy

19   subjects children and families to explicitly different treatment, the court concluded Project

20   Sentinel established a prima facie case of facial discrimination.  *Id.* (citing *Community House,*

21   *Inc.*, 490 F.3d at 1050).

22           The court next considered defendants' justifications for the discriminatory policy.

23   Only one of defendants' purported justifications was permissible under *Community House*: that

24   the policy protected the safety and well-being of young children.  Prev. Order 13.  The only

25   evidence defendants offered to support this justification was Brittain's declaration.  *Id.*  Brittain

26   generally identified the following safety hazards: the street adjacent to the complex, tables and

27   trees in the courtyard common area, outdoor grilling equipment, and a fenced swimming pool.  *Id.*

28   at 13–14 (quoting Brittain Decl. I ¶ 6).  She noted that one three-year-old child had drowned at a

1   different apartment complex in August 2014 while the child was unsupervised.  Brittain Decl. I

2   ¶ 6.  After considering this evidence and the relevant case law, the court determined that

3   defendants' safety concerns "[were] based largely on unfounded speculation," and that their

4   policy "[was] not adequately tailored to respond to those purported concerns."  Prev. Order 14.

5   The court concluded that defendants had not created a triable dispute as to whether the facial

6   discrimination was justified under the FHA.  *Id.* at 13–15.  In addition to finding Brittain

7   Commercial liable under § 3604(b) for its policy, the court also found RZM vicariously liable as

8   the owner of Birchwood Gardens.  *Id.* at 15–16.  Accordingly, the court granted Project Sentinel's

9   motion for partial summary judgment.

10          B.      Legal Standard

11                  The court has authority under its inherent powers and the Federal Rules of Civil

12  Procedure to reconsider its prior motion granting partial summary judgment.  "As long as a

13  district court has jurisdiction over [a] case, then it possesses the inherent procedural power to

14  reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."  *City of*

15  *Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citations and

16  emphasis omitted).  In addition, Rule 54(b) authorizes courts to revise "any order or other

17  decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all

18  the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the

19  parties' rights and liabilities."  Fed. R. Civ. P. 54(b).

20                  Reconsideration is appropriate where it is necessary to correct clear error or

21  prevent manifest injustice, where new evidence has become available, or where there has been an

22  intervening change in controlling law.  *Cachil Dehe Band of Wintun Indians v. California*, 649 F.

23  Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing *Sch. Dist. No. 1J Multnomah Cty. v. ACandS Inc.*, 5

24  F.3d 1255, 1263 (9th Cir. 1993)).  Under Local Rule 230(j), the party moving for reconsideration

25  must explain:

26                          (1) when and to what [j]udge . . . the prior motion was made;

27                          (2) what ruling, decision, or order was made thereon;

28

(3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and

(4) why the facts or circumstances were not shown at the time of the prior motion.

E.D. Cal. L.R. 230(j). "To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Knight v. Rios*, No. 09-00823, 2010 WL 5200906, at *2 (E.D. Cal. Dec. 15, 2010).

      C.     <u>Discussion</u>

Defendants argue reconsideration is warranted because new evidence and case law affects the court's analysis, and because the court previously erred by not considering whether the policy's limitation to "young" children rendered it lawful. *See* Mot. Recons. 1. The court considers and rejects each argument in turn.

      1.     <u>"New" Evidence</u>

Defendants first argue that "now that discovery has finished," new evidence creates genuine disputes of fact as to whether the policy violates § 3604(b). *See id.* at 1, 5, 9. The evidence defendants identify can generally be grouped into three categories:

(1) evidence that Dempsey and Bischoff violated the lease agreement, *see, e.g.*, Yellen Decl. Opp'n SJ ¶¶ 3–5, July 7, 2016, ECF No. 116-4; Johnson Dep. 185–87; Bischoff Dep. 85–86, 181, 195–96, 216; Brittain Decl. Opp'n TRO ¶ 8 & Ex. 21, ECF Nos. 14 & 14-11;

(2) testimony by Brittain and Johnson that the "Brief Recap of Notes" document was never in fact "implemented," *see* Johnson Decl. Opp'n SJ ¶ 3 (the policy "was never implemented or enforced by me"); Brittain Decl. II ¶¶ 7–10 (claiming that the policy "*was never implemented or enforced by anyone* at Brittain Commercial" (emphasis in original)); and

(3) evidence that the complex presents safety risks for children, especially in connection with the electronic gate to the parking lot, *see* Dempsey Dep. 127–28 (testifying that he believes kids should be watched at the complex so that they are

13

1    not "snatched" by strangers); and Miller Dep. 69, 223–25 (testifying that a number

2    of defendants' practices, such as leaving the gate to the parking lot open for

3    extended periods of time, "jeopardize[] the safety of children" and put "children in

4    a [sic] harm's way").

5    *See* Mot. Recons. 5–10.

6            Defendants' argument is unpersuasive for several reasons.  First, defendants did

7    not comply with Local Rule 230(j)'s requirement that they show why the purportedly new facts

8    were not presented at the time of the prior motion.  Second, contrary to defendants' assertion,

9    defendants were not "railroaded" by Project Sentinel's prior motion.  *See* Mot. Recons. 5.  At the

10   time Project Sentinel filed its prior motion, the case had already been pending for more than one

11   year.  At the July 16, 2015 Status (Pretrial Scheduling) Conference, a few months before the

12   motion was filed, plaintiffs' counsel described the anticipated filing of the motion.  *See* Prev.

13   Mot. Summ. J. 1.  At no point did defendants request additional time to conduct discovery under

14   Rule 56(d) or otherwise suggest that additional discovery would be beneficial.  Rule 56(d)

15   provides a procedure by which a non-moving party may obtain discovery needed to oppose a

16   motion for summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("Any

17   potential problem with . . . premature motions [for summary judgment] can be adequately dealt

18   with under Rule 56[d].[2]").  Third, most of the facts defendants put forth in support of their

19   motion for reconsideration were not previously unavailable to defendants, because they pertain to

20   defendants' own property and management practices.  Courts have rejected attempts by parties to

21   present their own testimony or other evidence in their possession as "new" evidence.  *See, e.g.*,

22   *Schlicht v. United States*, No. 03-1606, 2006 WL 229551, at *2 (D. Ariz. Jan. 30, 2006) ("It

23   usually defies all reasonable explanation why a party could not produce his own testimony at any

24   time in the proceeding."); *Morris v. McHugh*, 997 F. Supp. 2d 1144, 1176 (D. Haw. 2014).

25   Defendants in fact submitted some of the cited evidence of plaintiffs' alleged lease violations in

26

27   ─────────────────────

28          [2] Subsection (d) was labeled (f) at the time of the *Celotex* decision.

1   opposition to plaintiffs' motion for preliminary injunction in 2014.  Brittain Decl. Opp'n TRO ¶ 8

2   & Ex. 21.

3          Even if the court were to consider this evidence, however, it would not change the

4   court's previous ruling.  Defendants argue that the evidence of Bischoff's and Dempsey's lease

5   violations "creates an issue of fact" as to whether their tenancies were terminated for legitimate

6   purposes, Mot. Recons. 8, but that issue is not material.  Project Sentinel moved for summary

7   judgment only as to whether defendants' facially discriminatory "Brief Recap of Notes" policy

8   violated the FHA, not on whether the attempted evictions also violated the FHA.

9          Neither can Brittain and Johnson raise a genuine dispute of material fact by now

10  claiming that the "Brief Recap of Notes" policy "*was never implemented or enforced by anyone*

11  at Brittain Commercial," Brittain Decl. II ¶ 7 (emphasis in original); *see* Johnson Decl. Opp'n SJ

12  ¶ 3.  This statement is conclusory and contradicts Brittain's previous sworn statements that she

13  developed and distributed the "Brief Recap of Notes" documents to on-site managers to use as

14  guidelines in managing their sites, *see, e.g.*, Brittain Decl. I ¶¶ 9, 15.  *See Romero v. Cty. of Santa*

15  *Clara*, No. 11-04812, 2014 WL 3378628, at *11 (N.D. Cal. July 10, 2014) ("'[U]ncorroborated

16  and self-serving' testimony that 'flatly contradicts [ ] prior sworn statements' cannot create a

17  genuine issue of fact." (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))).

18  The statement also is inconsistent with Johnson's testimony that he tried to adhere to the

19  guidelines and took children home on at least two occasions because they were not supervised.

20  Johnson Dep. 95–100, 104–05.  Brittain and Johnson appear to largely base their statement on the

21  fact that defendants have not carried out steps three or four of the policy, of contacting social

22  services or evicting tenants because they left a child unsupervised.  *See* Brittain Decl. II ¶ 7 ("We

23  have never contacted . . . social services or the police regarding a parent's failure to supervise a

24  child.  We have never evicted a tenant for failing to supervise a child." (emphasis in original));

25  Johnson Decl. Opp'n SJ ¶ 3.  However, this fact does not raise a genuine dispute as to defendants'

26  liability.  As plaintiffs noted at hearing, a property manager cannot create a discriminatory multi-

27  step policy and then avoid liability by not implementing certain steps.  Defendants do not dispute

28  that they created the facially discriminatory "Brief Recap of Notes" document and distributed it to

15

1    all on-site managers as official guidance.  This alone is a sufficient basis for liability under the

2    FHA.  *Cf. Iniestra*, 886 F. Supp. 2d at 1166 (evidence regarding the specific implementation of

3    the policy may limit damages, but not liability).

4            As to the evidence of safety risks, although defendants have now identified

5    evidence substantiating some of the purported safety hazards at the complex, they have presented

6    no new evidence that the "Brief Recap of Notes" policy was the appropriate response to those

7    safety concerns.  *See* Prev. Order 14.  Miller identified safety hazards at the complex created by

8    defendants' practices, but did not advocate for a strict child supervision policy as the solution.

9    Rather, he proposed defendants take other actions, such as changing their practice of leaving the

10   gate open for extended periods.  *See* Miller Dep. 69, 154–56, 158, 223–25.  The existence of

11   dangerous conditions by itself does not justify policies that discriminate against children; a policy

12   must be adequately tailored and sufficiently necessary to justify the differential treatment.  *See*

13   Prev. Order 11–13 (interpreting the Ninth Circuit's decision in *Community House* as implicitly

14   requiring heightened tailoring, but not requiring a policy to be the least restrictive means of

15   achieving the allowed interests); *id.* at 14 (concluding the policy is not adequately tailored to

16   respond to the purported safety concerns).  Otherwise, property managers would have an

17   incentive to create unsafe conditions in order to justify rules discriminating against children.

18   Defendants also note that Miller included a sample policy in a handbook he published for

19   property managers in 1993 that is even more restrictive of children than defendants' policy is.

20   Miller Dep. 170–71, 194 & Ex. E, ECF No. 116-8.  Although this fact may undermine Miller's

21   credibility, it does not create a material dispute of fact or cause the court to re-think its prior legal

22   analysis.  *See, e.g.*, *Feezor v. Excel Stockton, LLC*, No. 12-0156, 2013 WL 2485623, at *2 (E.D.

23   Cal. June 10, 2013) ("[A]n expert witness cannot give an opinion as to her *legal conclusion, i.e.,*

24   an opinion on the ultimate issue of law." (quoting *Nationwide Transp. Fin. v. Cass Info. Sys.,*

25   *Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)) (emphasis in original)).

26           Defendants have not shown reconsideration is warranted based on new evidence.

27   /////

28   /////

16

1        2.        New District Court Case

2                Defendants next argue reconsideration is warranted in light of a district court

3    decision, *Campbell v. Vitran Express Inc.*, No. 11-05029, 2016 WL 873009 (C.D. Cal. Mar. 2,

4    2016) (denying partial summary judgment based on a facially defective employment policy).

5    Mot. Recons. 11–12.  However helpful they may be at times, other district court decisions are not

6    binding on this court.  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).  It would greatly strain

7    the court's time and resources to reconsider its prior orders whenever another district court issued

8    a decision supporting the losing party's position.  The *Campbell* decision does not warrant

9    reconsideration of the court's prior order here.

10        3.        Limitation to "Young" Children

11                Finally, defendants argue the court erred by not considering whether the policy's

12   limitation to "young" children rendered it lawful.  Mot. Recons. 12–14.  Defendants primarily

13   rely on dicta in another district court decision, *Pack v. Fort Washington II*, 689 F. Supp. 2d 1237

14   (E.D. Cal. 2009).  In *Pack*, the court held that a requirement that children ages ten and under be

15   supervised by an adult when outside was "overbroad and unduly restrictive," but opined that "it

16   would be reasonable to require adult supervision for young children."  *Id.* at 1243.  This court in

17   its prior order considered *Pack*, among other authorities, and concluded defendants' policy was

18   not adequately tailored to respond to their purported safety concerns.  Prev. Order 12–14.  In

19   making this determination, the court considered all of the relevant facts before the court,

20   including the specific language of defendants' policy.  *See, e.g.*, Prev. Order 3–5, 10–11, 13–15

21   (noting defendants' policy applies to "young children").  Reconsideration is not warranted on this

22   basis.

23                For the foregoing reasons, the court DENIES defendants' motion for

24   reconsideration of its prior order granting partial summary judgment for Project Sentinel.  The

25   court next considers plaintiffs' currently pending motion for partial summary judgment.

26   /////

27   /////

28   /////

17

1    III.    MOTION FOR PARTIAL SUMMARY JUDGMENT

2           A.    Legal Standard

3                  A court will grant summary judgment "if . . . there is no genuine dispute as to any

4    material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

5    The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

6    resolved only by a finder of fact because they may reasonably be resolved in favor of either

7    party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

8                  Rule 56 also authorizes the granting of summary judgment on part of a claim or

9    defense, known as partial summary judgment.  *See* Fed. R. Civ. P. 56(a) ("A party may move for

10   summary judgment, identifying each claim or defense—or the part of each claim or defense—on

11   which summary judgment is sought.").  The standard that applies to a motion for partial summary

12   judgment is the same as that which applies to a motion for summary judgment.  *See State of*

13   *California ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th

14   Cir. 1998) (applying summary judgment standard to motion for summary adjudication); *ARC of*

15   *Cal. v. Douglas*, No. 11-02545, 2015 WL 631426, at *3 (E.D. Cal. Feb. 13, 2015).

16                 The moving party bears the initial burden of "informing the district court of the

17   basis for its motion, and identifying those portions of [the record] which it believes demonstrate

18   the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  The burden then shifts

19   to the nonmoving party to "go beyond the pleadings" and "designate specific facts showing that

20   there is a genuine issue for trial."  *Id.* at 324 (quotation marks and citation omitted).  The non-

21   moving party "must do more than simply show that there is some metaphysical doubt as to the

22   material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

23   "Only disputes over facts that might affect the outcome of the suit under the governing law will

24   properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247–48.

25                 In deciding a motion for summary judgment, the court draws all inferences and

26   views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

27   587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

28   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

                                              18

1    issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*

2    *Co.*, 391 U.S. 253, 289 (1968)).

3      B. <u>Discussion</u>

4       Plaintiffs now seek partial summary judgment on their first claim for violation of

5    42 U.S.C. § 3604(b), on the third claim for violation of California Civil Code sections 51 and

6    51.2, and on the fourth claim for violation of 42 U.S.C. § 3604(c).  MSJ 1.  Specifically, plaintiff

7    Project Sentinel seeks partial summary judgment as to the liability of defendants Brittain and

8    Johnson on the first claim; plaintiffs Bischoff and Dempsey seek partial summary judgment as to

9    the liability of all defendants on the first and third claims; and all plaintiffs seek partial summary

10   judgment as to the liability of defendants Brittain, Brittain Commercial, and RZM on the fourth

11   claim.  *Id.*

12      The parties in their briefing analyze plaintiffs' FHA claims and Unruh Act claims

13   together.  *Id.* at 10–11; Opp'n SJ 7.  The provisions of the FHA and the Unruh Act involved here

14   protect substantially the same rights against housing discrimination and are in fact subject to the

15   same analysis.  *See Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 975 (N.D. Cal. 2013); *Iniestra*, 886

16   F. Supp. 2d at 1170.  Accordingly, the court likewise analyzes the claims together.  The court

17   does not here review arguments rejected above or in the court's previous order.  The court first

18   considers plaintiffs' claims under § 3604(b).

19      1. <u>Claims Under 42 U.S.C. § 3604(b) and the Unruh Act</u>

20       a) <u>Project Sentinel's Claims Against Brittain and Johnson</u>

21      As discussed above, the court previously granted Project Sentinel's motion for

22   partial summary judgment against defendants Brittain Commercial and RZM under § 3604(b) for

23   maintaining and implementing the facially discriminatory "Brief Recap of Notes" policy.  *See*

24   Prev. Order.  Project Sentinel now argues Brittain and Johnson also are liable under § 3604(b) for

25   creating, implementing, and following the "Brief Recap of Notes" policy.  MSJ 9–10; *see* Prev.

26   Order 9–15.  Individual employees can be held liable for their own unlawful conduct under the

27   FHA.  The language of § 3604 broadly makes it unlawful "to discriminate against any person in

28   the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services

1   or facilities in connection therewith," without limiting which persons or entities may be held

2   liable.  42 U.S.C. § 3604(b); *cf. Meyer v. Holley*, 537 U.S. 280, 285 (2003) (traditional agency

3   and vicarious liability principles apply to liability under the FHA); *cf. also Dillon v. AFBIC Dev.*

4   *Corp.*, 597 F.2d 556, 562 (5th Cir. 1979) ("An agent has no obligation to carry out his principal's

5   order to do an illegal act." (citing Restatement (Second) of Agency § 411 (1958)); *Hous.*

6   *Opportunities Project For Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp.

7   2d 1003, 1014 (S.D. Fla. 2007) ("[A]n excuse offered by an employee that she was acting at the

8   behest of her employer does not absolve her from the illegal actions she took nor does it preclude

9   her from liability.").

10         Brittain admitted during her deposition that she prepared the "Brief Recap of

11   Notes" policy and caused it to be distributed to the on-site managers.  Brittain Dep. 106, 108,

12   Feb. 8, 2016; *see also* Brittain Decl. I ¶¶ 9–12, 15.  Accordingly, Brittain is also liable for

13   implementing a facially discriminatory policy under § 3604(b).

14         However, the record is less clear as to Johnson's involvement.  Plaintiffs in their

15   briefing group Johnson and Brittain together and argue that together they have "created,

16   implemented, and followed" the unlawful "Brief Recap of Notes" document.  MSJ 10.  At

17   hearing, plaintiffs confirmed their position, that Johnson's own actions violated the FHA and that

18   he also is liable as a joint tortfeasor for helping implement the policy.  Plaintiffs rely solely on a

19   few statements by Johnson at his deposition that he understood that the "Brief Recap of Notes"

20   document should be followed as closely as possible, and that he took children home on at least

21   two occasions because they were unsupervised.  Johnson Dep. 95–100, 104–05.  It is not clear to

22   the court from this vague, undeveloped testimony that Johnson violated the FHA.  The court finds

23   plaintiffs have not met their burden of showing the absence of a genuine dispute of fact as to

24   Johnson's liability under the FHA.

25         The court GRANTS Project Sentinel's motion for summary judgment against

26   Brittain for a violation of § 3604(b) and the Unruh Act.  The court DENIES the motion against

27   Johnson.

28

| | |
|---|---|
| 1 |        b)    Bischoff's and Dempsey's Claims Against all Defendants |

2         The court has now found defendants Bischoff Commercial, RZM, and Bischoff are

3 liable to Project Sentinel for implementing the facially discriminatory "Brief Recap of Notes"

4 policy.  Plaintiffs Bischoff and Dempsey are likewise entitled to summary judgment against these

5 defendants on their first and third claims.  It is undisputed Bischoff and Dempsey, who are fathers

6 of minor children, resided at Birchwood Gardens while defendants adopted the "Brief Recap of

7 Notes" policy, and Dempsey continues to reside at Birchwood Gardens.  UMF Nos. 19–22;

8 Dempsey Dep. 17.  Accordingly, defendants are also liable to Bischoff and Dempsey for having

9 adopted their facially discriminatory policy.  *See* 42 U.S.C. § 3613 (creating private right of

10 action for "aggrieved person[s]"); c*f. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 375–

11 76 (1982) (Congress intended standing to sue under the FHA to extend to the full limits of Article

12 III); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001)

13 (irreparable injury may be presumed from a defendant's discrimination and violations of fair

14 housing statutes).

15         Defendants attempt to defeat summary judgment by raising disputes of fact that

16 are not material to plaintiffs' motion.  As with their motion for reconsideration, they insist they

17 attempted to terminate Bischoff's and Dempsey's tenancies as a result of legitimate lease

18 violations, not because their children were unsupervised.  Opp'n SJ 7–10.  However, plaintiffs

19 Bischoff and Dempsey move for summary judgment only as to defendants' facially

20 discriminatory "Brief Recap of Notes" policy; they do not move for summary judgment on

21 whether defendants' attempted termination of their tenancies independently violated the FHA.

22 *See* Reply SJ 4 & n.4.  On these facts, that plaintiffs allegedly violated the lease agreement does

23 not contradict the fact that defendants maintained a facially discriminatory child supervision

24 policy.

25         The court GRANTS Bischoff's and Dempsey's motion for partial summary

26 judgment as to the liability of Brittain, Brittain Commercial, and RZM under § 3604(b) and the

27 Unruh Act.  This order is limited to their liability for adopting the facially discriminatory "Brief

28 Recap of Notes" policy, and does not address their attempted termination of plaintiffs' tenancies.

1    For the same reasons provided above, the court DENIES the motion against

2    Johnson.

3         2.    Claims under 42 U.S.C. § 3604(c) and the Unruh Act

4    All plaintiffs seek summary judgment against defendants Brittain, Brittain

5    Commercial, and RZM under 42 U.S.C. § 3604(c) for the discriminatory "Brief Recap of Notes"

6    document.  As stated above, § 3604(c) makes it unlawful

7         [t]o make, print, or publish, or cause to be made, printed, or
          published any notice, statement, or advertisement, with respect to
8         the sale or rental of a dwelling that indicates any preference,
          limitation, or discrimination based on . . . familial status, . . . or an
9         intention to make any such preference, limitation, or discrimination.

10   42 U.S.C. § 3604(c).  The implementing regulations issued by the U.S. Department of Housing

11   and Urban Development ("HUD") provide that these prohibitions "apply to all written or oral

12   notices or statements by a person engaged in the sale or rental of a dwelling."  24 C.F.R.

13   § 100.75(b).  It states that notices and statements subject to the requirements "include any

14   applications, flyers, brochures, deeds, signs, banners, posters, billboards or any documents used

15   with respect to the sale or rental of a dwelling."  *Id.*  Prohibited statements include discriminatory

16   statements "[e]xpress[ed] to agents, brokers, employees, prospective sellers or renters or any

17   other persons."  *Id.* § 100.75(c)(2).  To determine whether a statement violates § 3604(c), courts

18   ask whether it "would suggest a preference to an ordinary reader or listener."  *Johnson v. Macy*,

19   145 F. Supp. 3d 907, 916 (C.D. Cal. 2015) (citation and quotation marks omitted).  "Intent is not

20   a necessary element of a § 3604(c) violation."  *Iniestra*, 886 F. Supp. 2d at 1169; *Rojas v. Bird*,

21   No. 13-04967, 2014 WL 260597, at *1 (C.D. Cal. Jan. 10, 2014).

22   As the court found in its previous order, defendants' "Brief Recap of Notes"

23   document plainly indicates a limitation on the use of common areas of the complex based on

24   familial status.  *See* Prev. Order 10; *see also Iniestra*, 886 F. Supp. 2d at 1169; *Pack*, 689 F. Supp.

25   2d at 1246.  It is undisputed defendants Brittain and Brittain Commercial caused the statements to

26   be made and distributed to Brittain Commercial's employees.  Brittain Dep. 106–08, Feb. 8,

27   2016; Brittain Decl. I ¶ 15; UMF No. 9.  Accordingly defendants Brittain and Brittain

28   Commercial violated § 3604(c).  As the owner of Birchwood Gardens, RZM is vicariously liable

                                          22

1   for the violation under § 3604(c).  *Meyer*, 537 U.S. at 285; *Llanos v. Estate of Coehlo*, 24 F.

2   Supp. 2d 1052, 1061 (E.D. Cal. 1998); *see* Prev. Order 15–16.  The court GRANTS plaintiffs'

3   motion for summary judgment under § 3604(c) and the Unruh Act against defendants Brittain,

4   Brittain Commercial, and RZM for making discriminatory statements.

5            Finally, the court considers plaintiffs' motion for interim attorney's fees.

6   IV.     MOTION FOR ATTORNEY'S FEES

7       A.    Legal Standard

8            The FHA authorizes an award of reasonable attorney's fees and costs to a

9   "prevailing party."  42 U.S.C. § 3613(c)(2).  The term "prevailing party" under the FHA "has the

10   same meaning as such term has in [42 U.S.C. § 1988]."  *Id.* § 3602(o).  "The purpose of § 1988 is

11   to ensure effective access to the judicial process for persons with civil rights grievances.

12   Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special

13   circumstances would render such an award unjust."  *Ballen v. City of Redmond*, 466 F.3d 736,

14   746 (9th Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

15            A plaintiff is a "prevailing party" for purposes of § 1988 "when actual relief on the

16   merits of his [or her] claim materially alters the legal relationship between the parties by

17   modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Higher Taste,*

18   *Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013) (quoting *Farrar v. Hobby*, 506 U.S.

19   103, 111–12 (1992)).  Relief "on the merits" occurs "when the material alteration of the parties'

20   legal relationship is accompanied by 'judicial *imprimatur* on the change.'"  *Id.* (quoting

21   *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605

22   (2001)).  Examples of such relief, depending on the facts, have included achieving a judgment on

23   the merits, winning a preliminary injunction, or entering into a legally enforceable settlement

24   agreement.  *Carbonell v. I.N.S.*, 429 F.3d 894, 898–99 (9th Cir. 2005); *see, e.g.*, *Watson v. City.*

25   *of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) (preliminary injunction); *Richard S. v. Dep't of*

26   *Dev. Servs.*, 317 F.3d 1080, 1086 (9th Cir. 2003) (settlement).  To satisfy the "material alteration"

27   requirement, the relief obtained must be sufficiently "enduring," *Yamada v. Snipes*, 786 F.3d

28

1  1182, 1208 (2015), and cannot be "purely technical or *de minimis*," *Texas State Teacher Ass'n. v.*

2  *Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989).

3       B.    Discussion

4       Plaintiffs Bischoff and Dempsey argue they are prevailing parties based on this

5  court's orders approving their stipulated temporary restraining order and granting their motion for

6  preliminary injunction.  Atty's Fees Mot. 8–10 (discussing ECF Nos. 8 & 20).  Plaintiff Project

7  Sentinel contends it is a prevailing party based on this court's order granting its motion for partial

8  summary judgment as to the liability of defendants Brittain Commercial and RZM.  *Id.* at 8

9  (discussing Prev. Order).

10       The court first examines three Ninth Circuit cases—*Watson*, 300 F.3d 1092,

11  *Higher Taste*, 717 F.3d 712, and *Yamada*, 786 F.3d 1182—for additional guidance on the

12  applicable legal standards for prevailing party status, and then applies those principles to

13  plaintiffs here.

14       1.    Relevant Case Law

15       Plaintiffs, and especially Bischoff and Dempsey, rely heavily on the Ninth

16  Circuit's decision in *Watson*.  *See* Atty's Fees Mot. 8–10.  In *Watson*, the plaintiff, a former

17  county deputy sheriff, alleged that county officials violated his rights by compelling him to write

18  a report about an incident in which he allegedly used excessive force, and by refusing to allow

19  him to consult with a lawyer prior to writing the report.  300 F.3d at 1093–94.  Among other

20  relief, the plaintiff sought an injunction enjoining the county from using the report at the hearing

21  on his appeal of his termination from the sheriff's office.  *Id.* at 1094.  The court issued a

22  preliminary injunction prohibiting introduction of the report at the administrative hearing.  *Id.*

23  Nearly two years later, long after the administrative hearing had passed, the court granted

24  summary judgment in favor of the defendants on all issues except for the plaintiff's claim for

25  permanent injunctive relief, as to which the court found a triable dispute of fact.  *Id.*  By that time,

26  however, the claim for a permanent injunction had become moot, so the court dismissed the case.

27  *Id.*

28

1    The *Watson* court held that the plaintiff was a prevailing party under § 1988,

2  because by securing a preliminary injunction that prevented the use of the report at the

3  administrative hearing, he had "obtained significant, court-ordered relief that accomplished one of

4  the main purposes of his lawsuit." *Id.* at 1096.  The Ninth Circuit also found the district court did

5  not abuse its discretion when it awarded the plaintiff fees for time spent litigating his unsuccessful

6  claims.  *Id.* at 1096–97.  The court distinguished the case from cases in which the "plaintiff scores

7  an early victory by securing a preliminary injunction, [but] then loses on the merits as the case

8  plays out and judgment is entered against him—a case of winning a battle but losing the war."  *Id.*

9  at 1096.  *Watson* was not such a case, the court noted, because the claim for permanent injunctive

10  relief "was not decided on the merits . . . [or] dissolved for lack of entitlement"; rather, "[it] was

11  rendered moot . . . after the preliminary injunction had done its job."  *Id.*

12    Two more recent Ninth Circuit decisions—*Higher Taste* and *Yamada*—help

13  further define the contours of prevailing party status where a plaintiff secures an early preliminary

14  injunction.  In *Higher Taste*, the city park district adopted a resolution that would ban the plaintiff

15  non-profit religious organization from selling t-shirts along the main walkway leading to the

16  entrance of a zoo, which it had done for years.  717 F.3d at 714.  The plaintiff organization sued

17  the district under 42 U.S.C. § 1983 based on alleged violations of the First and Fourteenth

18  Amendments, and successfully secured a preliminary injunction enjoining enforcement of the

19  resolution.  *Id.* at 714–15.  Relatively early on in the case, before the court issued a final ruling on

20  the merits, the parties entered into a settlement agreement that allowed the plaintiff to continue

21  selling its shirts.  *Id.* at 715.

22    The Ninth Circuit in *Higher Taste* held that the plaintiff was a prevailing party,

23  and in so doing, elaborated on the applicable legal standards.  The court noted that it is not

24  enough that a preliminary injunction generally satisfies the judicial imprimatur requirement and

25  forces the defendant to something it otherwise would not have to do.  *Id.* at 716–17.  For a

26  plaintiff to be a prevailing party, the preliminary injunction must also achieve "enduring" change

27  in the parties' legal relationship.  *Id.* at 717.  The court explained that a plaintiff is a prevailing

28  party "when [it] wins a preliminary injunction and the case is rendered moot before final

25

1  judgment, either by the passage of time[,] other circumstances beyond the parties' control, . . . .

2  [or] by the defendant's own actions." *Id.*  In such cases, the relief is sufficiently enduring

3  because, by virtue of the case's mootness, the relief "[is] no longer subject to being 'reversed,

4  dissolved, or otherwise undone by the final decision in the same case.'" *Id.* (quoting *Sole v.*

5  *Wyner*, 551 U.S. 74, 83 (2007)).  By contrast, a plaintiff is not a prevailing party when it

6  "succeeds at the preliminary injunction stage but loses on the merits after the case is litigated to

7  final judgment." *Id.*  Applying these principles, the *Higher Taste* court concluded that the

8  plaintiff organization was a prevailing party because the settlement agreement "transformed what

9  had been temporary relief capable of being undone . . . into a lasting alteration of the parties' legal

10  relationship," and "gave [the plaintiff] what it had hoped to obtain through a permanent

11  injunction." *Id.* at 718.

12          The Ninth Circuit articulated similar principles in *Yamada.*  In *Yamada*, the

13  plaintiffs secured a preliminary injunction on their claim that Hawaii campaign finance laws

14  limiting contributions to noncandidate committees to $1,000 violated the First Amendment.  786

15  F.3d at 1207.  The defendants filed an interlocutory appeal, and then abandoned it.  *Id.*  On the

16  parties' subsequent cross-motions for summary judgment, the district court permanently enjoined

17  enforcement of the law as applied to the plaintiffs' proposed contributions.  *Id.*  Citing *Watson*,

18  the district court concluded that the plaintiffs became prevailing parties under § 1988 when the

19  defendants abandoned their appeal of the preliminary injunction.  *Id.* at 1208.  As a result, the

20  court concluded it did not have authority under Ninth Circuit Rule 39-1.6 to award fees pertaining

21  to the interlocutory appeal, because the Ninth Circuit had not transferred the fee request to the

22  district court.  *Id.*  The Ninth Circuit in *Yamada* found the district court's analysis to be flawed in

23  part because, contrary to the district court's conclusion, the plaintiffs did not become prevailing

24  parties until the district court entered final judgment against the defendants on their claim.  *Id.*

25  (reversing district court's denial of fees arising from the prior appeal).  The court distinguished

26  the case from *Watson*.  *Id.*  It limited *Watson*'s holding to the proposition that, "when a plaintiff

27  wins a preliminary injunction *and the case is rendered moot before final judgment*, either by

28  passage of time or other circumstances beyond the parties' control, the plaintiff is a prevailing

26

1    party eligible for a fee award." *Yamada*, 786 F.3d at 1208 (quoting *Higher Taste*, 717 F.3d at

2    717) (emphasis in *Yamada*).  In *Yamada*, the Ninth Circuit found the plaintiffs' challenge to the

3    campaign finance laws was not "rendered moot" until the district court entered final judgment

4    against the defendants on that claim.  *Id.*  Before that point, the preliminary injunction could have

5    been negated by a final decision on the merits.  *Id.*

6                       2.    Analysis

7            Applying the principles of *Watson*, *Higher Taste*, and *Yamada* here, the court finds

8    plaintiffs are not prevailing parties at this stage.  The relief they have obtained is not sufficiently

9    enduring to confer prevailing party status, because the temporary restraining order, preliminary

10   injunction, and order granting partial summary judgment all are interlocutory orders that could be

11   reversed, dissolved, or otherwise undone by this court's final decision in this case.  *See Santa*

12   *Monica BayKeeper*, 254 F.3d at 885 ("As long as a district court has jurisdiction over [a] case,

13   then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory

14   order for cause seen by it to be sufficient." (citations and emphasis omitted)).

15           The fact that Bischoff's claim for injunctive relief is now moot does not make him

16   a prevailing party.  Unlike in *Watson*, the claim was rendered moot by Bischoff's own conduct of

17   submitting a notice of intent to vacate, rather than by defendants' conduct or circumstances

18   beyond the parties' control.  *See Higher Taste*, 717 F.3d at 717.  Also, unlike the plaintiffs in

19   *Watson* and *Higher Taste*, Bischoff has not achieved what he had hoped to obtain through a

20   permanent injunction, to continue residing at the apartment complex after the lawsuit.  *See id.*

21   at 718.  Accordingly, this case does not fall within the narrow circumstances in which a party is a

22   prevailing party before final judgment based on a preliminary injunction.

23           In addition, the court is not persuaded by Bischoff's and Dempsey's argument that

24   the preliminary injunction achieved enduring change because it allowed them to reach their one-

25   year residency milestones which, under California Civil Code Section 1946.1, legally entitles

26   them to at least sixty-days' notice before defendants could attempt to terminate their tenancies

27   without cause.  Nothing on the face of the complaint suggests that one of plaintiffs' main

28

1  purposes in bringing suit was to become entitled to this sixty-day's notice. Rather, this relief

2  appears to be "purely technical" and "*de minimis*." *Texas State Teacher Ass'n*, 489 U.S. at 792.

3          Because plaintiffs have not at this stage satisfied the requirements for prevailing

4  party status under § 1988, the court DENIES without prejudice their motion for attorney's fees

5  and costs.

6  V.      <u>CONCLUSION</u>

7          For the foregoing reasons, the court DENIES defendants' motion for

8  reconsideration; DENIES plaintiffs' motion for partial summary judgment against Johnson and

9  GRANTS it in all other regards; and DENIES without prejudice plaintiffs' motion for attorney's

10  fees and costs. The court OVERRULES as moot defendants' objection to plaintiffs' notice of

11  recent consent judgment and attorney fee award (ECF No. 127).

12          The claims not resolved by this order are all of plaintiffs' claims against Johnson,

13  plaintiffs' claim against all defendants under 42 U.S.C. § 3604(b) based on the allegedly

14  discriminatory attempted eviction of Bischoff and Dempsey, and plaintiffs' claim against all

15  defendants under 42 U.S.C. § 3617.

16          IT IS SO ORDERED.

17   DATED: September 15, 2016.

18

19                            UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28